# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:** | **FOR COURT USE ONLY** |
| *(AVISO AL DEMANDADO):* | *(SOLO PARA USO DE LA CORTE)* |

WAL-MART STORES, INC., a Delaware Corporation; WAL-MART ASSOCIATES, INC., a Delaware Corporation; HEALTHWORKS MEDICAL GROUP, a California Corporation; and DOES 1 through 100, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**

*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
KRIS KENNY, on behalf of himself and all others similarly situated

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JAN 1 3 2017

BY _____
ANNE PERRY, DEPUTY

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site *(www.lawhelpcalifornia.org)*, the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: | **CASE NUMBER** *(Número del Caso):* |
| *(El nombre y dirección de la corte es):* | CIVDS 1700766 |

SAN BERNARDINO COUNTY SUPERIOR COURT
247 West Third Street
San Bernardino, California 92415-0210

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
BRENNAN S. KAHN, ESQ. (SBN 259548) PERONA, LANGER, BECK, SERBIN, MENDOZA & HARRISON
300 East San Antonio Drive (562) 426-6155
Long Beach, California 90807

| | | | |
|---|---|---|---|
| DATE: JAN 1 3 2017 | Clerk, by | Anne Perry | , Deputy |
| *(Fecha)* | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use Judicial Council of California SUM-100 (Rev. July 1, 2009) | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |

Essential Forms

Kenny Class Action

**REMOVAL EXHIBIT A 001**

1  David M. deRubertis, State Bar No. 208709
   Kelly A. Knight, State Bar No. 246370
2  **The deRubertis Law Firm, APC**
   4219 Coldwater Canyon Avenue
3  Studio City, California 91604
   T: (818) 761-2322 / F: (818) 761-2323
4
   Todd H. Harrison, State Bar No. 230542
5  Brennan S. Kahn, State Bar No. 259548
   **Perona, Langer, Beck, Serbin,**
6  **Mendoza & Harrison, APC**
   300 East San Antonio Drive
7  Long Beach, California 90807
   T: (562) 426-6155 / F: (562) 490-9823
8
   Attorneys for Plaintiff, Kris Kenny on behalf of himself and all others similarly situated

[Space Below Reserved for Court Use Only]

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JAN 13 2017

BY _____
ANNE PERRY, DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN BERNARDINO

| | |
|---|---|
| KRIS KENNY, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>vs.<br><br>WAL-MART STORES, INC., a Delaware Corporation; WAL-MART ASSOCIATES, INC., a Delaware Corporation; U.S. HEALTHWORKS MEDICAL GROUP, a California Corporation; and DOES 1 through 100, Inclusive,<br><br>       Defendants. | Case Number:   CIVDS 1700766<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>(1)   Disability Discrimination;<br><br>(2)   Failure to Reasonably Accommodate;<br><br>(3)   Failure to Engage in the Interactive Process;<br><br>(4)   Failure to Maintain a Workplace Free From Discrimination and Retaliation;<br><br>(5)   Retaliation in Violation of FEHA;<br><br>(6)   Retaliation and Wrongful Termination in Violation of *Labor Code* § 1102.5;<br><br>(7)   Wrongful Termination in Violation of Public Policy;<br><br>(8)   Violation of the Constitutional Right to Privacy;<br><br>(9)   Aiding and Abetting in Violation of FEHA;<br><br>(10)  Declaratory and Injunctive Relief; and<br><br>(11)  Violation of *Business and Professions Code* § 17200<br><br>**Jury Trial Demanded** |

-1-

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 002

1   Plaintiff, Kris Kenny, on behalf of himself and all others similarly situated, (hereinafter referred

2   to as "Plaintiffs"), hereby file this Complaint against Defendants, WAL-MART STORES, INC., a

3   Delaware Corporation, WAL-MART ASSOCIATES, INC., a Delaware Corporation, U.S.

4   HEALTHWORKS MEDICAL GROUP, a California Corporation; and DOES 1 through 100

5   (hereinafter collectively referred to as "Defendants"). Plaintiffs are informed and believe, and on the

6   basis of that information and belief, allege as follows:

7

8   **INTRODUCTION**

9   1.   This is a civil class action seeking both general, special and punitive damages, as well

10   as injunctive relief, as a result of Defendants' violations California law including, but not limited to,

11   California *Government Code* ("*Government Code*") §§ 12925, 12926 et seq., 12926.1, 12940 et seq.,

12   California *Labor Code* ("*Labor Code*") § 1102.5 et seq., California *Business and Professions Code*

13   §17200, et seq., California's Fair Employment and Housing Act ("FEHA"), the California Constitution

14   and common law regarding public policy.

15   2.   Plaintiffs' action seeks monetary damages, including full restitution of employment and

16   lost income from Defendants, as well as changes in Defendants' policies and practices, as a result of

17   Defendants' unlawful, fraudulent and unfair business practices in California.

18   3.   The acts complained of herein occurred, occur and will occur, at least in part, within the

19   time period from four (4) years preceding the filing of this complaint, up to and through the entry of

20   judgment in this matter (hereinafter, the "relevant time period").

21

22   **JURISDICTION AND VENUE**

23   4.   This Court has jurisdiction over this action pursuant to California Constitution Article

24   VI, § 10, which grants the Superior Court "original jurisdiction in all causes except those given by

25   statute to other courts." The statutes under which this action is brought do not specify any other basis

26   for jurisdiction.

27   / / /

28   / / /

-2-

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 003

5.     Plaintiffs have exhausted their administrative remedies by the timely request of a Right-to-Sue notice from the California Department of Fair Employment and Housing within one year of the events alleged herein.

6.     Plaintiffs have exhausted their administrative remedies by providing timely notice to the Labor & Workforce Development Agency of their claims within the period provided by statute.

7.     This Court has jurisdiction over all Defendants because, based on information and belief, each party is either a citizen of California, has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

8.     Venue is proper in this Court because, upon information and belief, one or more of the named Defendants reside, transact business, or have offices in this county and/or the acts and omissions alleged herein took place in this county.

**THE PARTIES**

9.     Plaintiff, KRIS KENNY (hereinafter "KENNY"), is now and/or at all times mentioned in this Complaint was an individual over the age of eighteen (18) years old and was a resident of Riverside County, in the State of California.

10.     Defendant, WAL-MART STORES, INC. (hereinafter collectively as "WAL-MART"), was and is, upon information and belief, a Delaware Corporation doing business within the State of California, and at all times hereinafter mentioned, is an employer whose employees are engaged in commerce throughout this county and the State of California.

11.     Defendant, WAL-MART ASSOCIATES, INC. (hereinafter collectively as "WAL-MART"), was and is, upon information and belief, a Delaware Corporation doing business within the State of California, and at all times hereinafter mentioned, is an employer whose employees are engaged in commerce throughout this county and the State of California.

12.     Defendant, U.S. HEALTHWORKS MEDICAL GROUP (hereinafter "HEALTHWORKS"), was and is, upon information and belief, a California Corporation doing business within the State of California, and at all times hereinafter mentioned, is an employer whose

-3-
CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A 004**

1    employees are engaged in commerce throughout this county and the State of California.

2       13.     Plaintiff is unaware of the true names or capacities of the Defendants sued herein under

3 the fictitious names DOES 1-100, but prays for leave to amend and serve such fictitiously named

4 Defendants pursuant to California *Code of Civil Procedure* ("CCP")§ 474, once their names and

5 capacities become known.

6       14.     Plaintiff is informed and believes, and thereon alleges, that DOES 1-100 are the

7 partners, joint ventures, parent companies, owners, shareholders or managers or employees of

8 Defendants and, therefore, were acting on behalf of Defendants.

9       15.     WAL-MART, HEALTHWORKS and DOES 1-100 will hereafter be collectively

10 referred to as "Defendants."

11       16.     Plaintiff is informed and believes, and thereon alleges, that each of said Defendants are

12 in some manner intentionally, negligently, or otherwise responsible for the acts, occurrences or

13 transactions alleged herein.

14       17.     Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and

15 omissions alleged herein were performed by, or are attributable to, all Defendants, each acting as the

16 agent for the other, with legal authority to act on the other's behalf.  The acts of Defendants were in

17 accordance with, and represent the official policy of Defendants.

18       18.     Plaintiff is informed and believes, and thereon alleges, that at all times material hereto

19 and mentioned herein, each Defendant sued herein *(both named and DOE Defendants)* was the agent,

20 servant, employer, joint venturer, joint employer, contractor, contractee, partner, division owner,

21 subsidiary, division, alias, and/or alter ego of each of the remaining Defendants and was, at all times,

22 acting within the purpose and scope of such agency, servitude, employment, contract, ownership,

23 subsidiary, alias and/or alter ego and with the authority, consent, approval, control, influence and

24 ratification of each remaining Defendant sued herein.

25       19.     At all times herein mentioned, Defendants, and each of them, ratified each and every act

26 or omission complained of herein.  At all times herein mentioned, the Defendants, and each of them,

27 aided and abetted the acts and omissions of each and all the other Defendants in proximately causing

28 the damages herein alleged.

1

## RELEVANT JOB TITLES

2      20.     The relevant job titles in this action are persons that worked for Defendants' as
3   California-based full-time and/or part-time regular associates who were hired by WAL-MART on a
4   non-seasonal basis during the relevant time period (the "Class Members").

5

6

## SUMMARY OF CLAIMS

7      21.     With regard to the Class Members, Defendants, due to their collective unlawful
8   conduct, have:

9            (a)    Discriminated against the Class Members on the basis of their disabilities;

10           (b)    Failed to reasonably accommodate the Class Members for their disabilities;

11           (c)    Failed to engage in the interactive process with the Class Members;

12           (d)    Failed to ensure that the Class Members' workplaces were free of discrimination
13                  and retaliation;

14           (e)    Retaliated against the Class Members for engaging in protected activities;

15           (f)    Terminated the Class Members in violation of public policy;

16           (g)    Violated the privacy rights of the Class Members;

17           (h)    Aided and abetted in harming the Class Members in violation of the Fair
18                  Employment and Housing Act ("FEHA"); and

19           (i)    Engaged in unfair and/or unlawful business practices to the detriment of the
20                  Class Members and/or the public at large.

21

22

## CLASS ACTION ALLEGATIONS

23

24   A.     **Class Action Definitions**

25

26      22.     Plaintiffs bring this suit as a class action pursuant to CCP § 382, on behalf of
27   individuals who have been discriminated against on the basis of their disabilities and/or who have had
28   their privacy rights violated by Defendants all as a result of Defendants' unlawful drug and/or urine

-5-

CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A 006**

1    testing policies and/or practices.

2         23.     The putative Classes that Plaintiffs will seek to certify are currently composed of and

3    defined as follows:

4         Class 1:        All persons previously employed by WAL-MART in California as a regular

5                         part-time and/or full-time associate who were terminated by WAL-MART after

6                         suffering a workplace-related injury while employed by WAL-MART and then

7                         failing and/or refusing to submit to a drug and/or urine test with

8                         HEALTHWORKS ("Class 1").

9         Class 2:        All persons previously employed by WAL-MART in California as a regular

10                        part-time and/or full-time associate who were terminated by WAL-MART after

11                        suffering a workplace-related injury which made them disabled while employed

12                        by WAL-MART and then failing and/or refusing to submit to a drug and/or

13                        urine test with HEALTHWORKS ("Class 2").

14        Class 3:        All persons previously employed by WAL-MART in California as a regular

15                        part-time and/or full-time associate who were terminated by WAL-MART after

16                        suffering a workplace-related injury while employed by WAL-MART and then

17                        being requested to submit to a drug and/or urine test with HEALTHWORKS

18                        ("Class 3").

19        Class 4:        All persons previously employed by WAL-MART in California as a regular

20                        part-time and/or full-time associate who were terminated by WAL-MART after

21                        suffering a workplace-related injury which made them disabled while employed

22                        by WAL-MART and then being requested to submit to a drug and/or urine test

23                        with HEALTHWORKS ("Class 4").

24        Class 5:        All persons currently employed by WAL-MART in California as a regular part-

25                        time and/or full-time associate who took a drug and/or urine test with

26                        HEALTHWORKS as a result of suffering a workplace-related injury while

27                        employed by WAL-MART ("Class 5").

28    ///

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 007

| | | |
|---|---|---|
| 1 | Class 6: | All persons currently employed by WAL-MART in California as a regular part- |
| 2 | | time and/or full-time associate who took a drug and/or urine test with |
| 3 | | HEALTHWORKS as a result of suffering a workplace-related injury which |
| 4 | | made them disabled while employed by WAL-MART ("Class 5"). |
| 5 | Class 7: | All persons currently employed by WAL-MART in California as a regular part- |
| 6 | | time and/or full-time associate who were requested by WAL-MART and/or |
| 7 | | HEALTHWORKS to submit to a drug and/or urine test with HEALTHWORKS |
| 8 | | after suffering a workplace-related injury while employed by WAL-MART |
| 9 | | ("Class 7"). |
| 10 | Class 8: | All persons currently employed by WAL-MART in California as a regular part- |
| 11 | | time and/or full-time associate who were requested by WAL-MART and/or |
| 12 | | HEALTHWORKS to submit to a drug and/or urine test with HEALTHWORKS |
| 13 | | after suffering a workplace-related injury which made them disabled while |
| 14 | | employed by WAL-MART ("Class 8"). |

15     (Class 1, Class 2, Class 3, Class 4, Class 5, Class 6, Class 7 and Class 8 shall be collectively

16 referred to as the "Classes" herein)

17     24.     Throughout discovery in this litigation, Plaintiffs may find it appropriate and/or

18 necessary to amend the definition of the Classes. Thus, Plaintiffs will formally define and designate a

19 definition of the Classes at such time when Plaintiffs seeks to certify the Classes alleged herein.

20

21 **B.**     **Class Action Requirements**

22

23     25.     Numerosity (CCP § 382): The potential quantity of members of the Classes as defined

24 is so numerous that joinder of all members would be unfeasible and impractical. The disposition of

25 their claims through this Classes action will benefit both the parties and this Court. The quantity of

26 members of the Classes is unknown to Plaintiffs at this time, however, it is estimated that the Classes

27 number greater than 100 individuals. The quantity and identity of such membership is readily

28 ascertainable via inspection of Defendants' records.

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 008

1    26.    Typicality: The claims of Plaintiffs are typical of the claims of all members of the

2    Classes mentioned herein because all members of the Classes sustained injuries and damages arising

3    out of Defendants' common course of conduct in violation of law and the injuries and damages of all

4    members of the Classes were caused by Defendants' wrongful conduct in violation of law, as alleged

5    herein.

6    27.    Adequacy: Plaintiffs are adequate representatives of the Classes herein, will fairly

7    protect the interests of the members of the Classes, have no interests antagonistic to the members of

8    the Classes and will vigorously pursue this suit via attorneys who are competent, skilled and

9    experienced in litigating matters of this type.

10    28.    Superiority (CCP § 382): The nature of this action and the nature of laws available to

11    Plaintiffs make use of the class action format particularly efficient and appropriate procedure to afford

12    relief to plaintiffs for the wrongs alleged herein, as follows:

13            (a)    California has a public policy which encourages the use of the class action

14                 device;

15            (b)    By establishing a technique whereby the claims of many individuals can be

16                 resolved at the same time, the class suit both eliminates the possibility of

17                 repetitious litigation and provides small claimants with a method of obtaining

18                 redress for claims which would otherwise be too small to warrant individual

19                 litigation;

20            (c)    This case involves a small number of large corporate Defendants and a large

21                 number of individual class members with many relatively small claims and

22                 common issues of law and fact;

23            (d)    If each individual member of each of the Classes was required to file an

24                 individual lawsuit, the large corporate Defendants would necessarily gain an

25                 unconscionable advantage because Defendants would be able to exploit and

26                 overwhelm the limited resources of each individual member of the Classes with

27                 Defendants' vastly superior financial and legal resources;

28    / / /

-8-

REMOVAL EXHIBIT A 009

(e)   Requiring each individual member of each of the Classes to pursue an individual remedy would also discourage the assertion of lawful claims by the members of the Classes who would be disinclined to pursue an action against Defendants because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being;

(f)   Proof of a common business practice or factual pattern, of which the members of the Classes experienced, is representative of the Classes herein and will establish the right of each of the members of the Classes to recover on the causes of action alleged herein;

(g)   Absent class treatment, the prosecution of separate actions by the individual members of the Classes, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual members of the Classes against Defendants; and which would establish potentially incompatible standards of conduct for Defendants; and/or legal determinations with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interest of the other members of the Classes who are not parties to the adjudications or which would substantially impair or impede the ability of the members of the Classes to protect their interests;

(h)   The claims of the individual members of the Classes are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto; and

(i)   Courts seeking to preserve efficiency and other benefits of class actions routinely fashion methods to manage any individual questions. The Supreme Court of California urges trial courts to be procedurally innovative in managing class actions, which have an obligation to consider the use of innovative procedural tools to certify a manageable class.

///

**REMOVAL EXHIBIT A 010**

29.   <u>Existence and Predominance of Common Questions of Fact and Law (CCP §382)</u>: There are common questions of law and fact as to the members of the Classes which predominate over questions affecting only individual members of the Classes including, without limitation, whether the classes were discriminated against on the basis of their disabilities and/or had their privacy rights violated as a result of any unlawful drug and/or urine testing policies and/or practice implemented and/or executed by Defendants, and as a result:

(a)   Whether WAL-MART discriminated against the members of the Classes on the basis of their disabilities in violation of the FEHA;

(b)   Whether WAL-MART failed to reasonably accommodate the members of the Classes for their disabilities in violation of the FEHA;

(c)   Whether WAL-MART failed to engage in the interactive process with the members of the Classes in violation of the FEHA;.

(d)   Whether WAL-MART failed to ensure that the members of the Classes' workplaces were free of discrimination and retaliation in violation of the FEHA;

(e)   Whether WAL-MART retaliated against the members of the Classes for engaging in protected activities in violation of the FEHA and/or *Labor Code* §1102.5;

(f)   Whether WAL-MART terminated the members of the Classes in violation of public policy protecting the rights of disabled employees and, in general, the privacy rights of all employees;

(g)   Whether Defendants, and each of them, violated the privacy rights of the members of the Classes;

(h)   Whether HEALTHWORKS aided and abetted in harming the members of the Classes in violation of the FEHA;

(i)   Whether Defendants engaged in unfair and/or unlawful business practices to the detriment of the members of the Classes and/or the public at large in violation California *Business and Professions Code* §17200, et seq.;

/ / /

-10-

REMOVAL EXHIBIT A 011

(j)   Whether the members of the Classes suffered a workplace injury while employed by WAL-MART;

(k)   Whether the members of the Classes were disabled while employed by WAL-MART;

(l)   Whether the members of the Classes, as a matter of policy and/or practice, were requested to take a urine and/or drug test with HEALTHWORKS as a result of a workplace injury while employed by WAL-MART;

(m)   Whether the Defendants implemented any policy or procedure to determine whether any of the members of the Classes were intoxicated while at work prior to requesting that they take a urine and/or drug test with HEALTHWORKS while employed by WAL-MART;

(n)   Whether the Defendants implemented any policy or procedure, as part of any interactive process, to determine whether a reasonable accommodation could be met for those who could not immediately submit to a drug and/or urine test with HEALTHWORKS in compliance with Defendants' policies and/or practices requiring such a test after the Class Member suffered a workplace injury while employed by WAL-MART;

(o)   Whether those members of the Classes who were disabled and did not submit to a drug test with HEALTHWORKS as Defendants demanded due to their workplace injuries while employed by WAL-MART were denied reasonable accommodations;

(o)   Whether the members of the Classes were terminated by WAL-MART as a result of failing to and/or refusing to submit to Defendants' demanded drug and/or urine test with HEALTHWORKS as a result of their workplace injuries suffered while employed by WAL-MART;

(p)   Whether the members of the Classes are entitled to compensatory, incidental, consequential, general and/or special damages, and if so, the means of measuring such damages;

-11-

REMOVAL EXHIBIT A 012

1           (q)     Whether the members of the Classes are entitled to injunctive relief;

2           (r)     Whether the members of the Classes are entitled to restitution of their

3                      employment;

4           (s)     Whether Defendants are liable for punitive damages;

5           (t)     Whether Defendants are liable for pre-judgment interest; and

6           (u)     Whether Defendants are liable for attorneys' fees and costs.

7      30.    Whether the members of the Classes might be required to ultimately justify an

8 individual claim does not preclude maintenance of a Classes action. *See Collins v. Rocha* (1972) 7

9 Cal.3d 232, 238.

## C.    Defendant WAL-MART

31.    At all times mentioned here, WAL-MART is an employer who owns and/or operates dozens of retail stores throughout the state of California, whereby it employs thousands of employees throughout the state, including within the county of San Bernardino, California.

## D.    Defendant HEALTHWORKS

32.    At all times mentioned here, HEALTHWORKS is a business which owns and/or operates dozens of laboratories throughout the state of California, including the county of San Bernardino, California. At its facilities, HEALTHWORKS it conducts various testing, including urine and/or drug testing, for its customers, including WAL-MART..

## E.    WAL-MART's longstanding history of discrimination against disabled workers.

        **1.**     **Late-1990s into the early-2000s: The federal government's attempt to get WAL-MART to stop discriminating against disabled workers culminates in a Master Consent Decree.**

-12-

**REMOVAL EXHIBIT A 013**

33.     WAL-MART has a decades-long history of systemic discrimination against its disabled and older workers that has become a standard operating procedure, an accepted way of doing business, and a deeply-embedded part of WAL-MART's corporate culture. Indeed, discrimination against disabled workers has been so widespread and common at WAL-MART that the federal government has repeatedly been forced to file enforcement actions against WAL-MART relating to its treatment of disabled workers. At all times, such discriminatory practices directly led to the harm suffered by the members of the Classes, as alleged herein.

34.     In the late-1990s and/or early-2000s, the federal government filed and litigated a series of disability discrimination cases alleging violations of the federal disability discrimination law – the Americans with Disabilities Act (ADA) – against WAL-MART.  Some of these cases alleged a systemic, widespread pattern and practice of discrimination against disabled workers by WAL-MART. Upon information and belief, some of the cases filed by the federal government against WAL-MART during that time period include, *inter alia*:

- *E.E.O.C. v. Wal-Mart Stores, Inc.*, Case No. S99-0414 GEB DAD (E.D. Cal.);
- *E.E.O.C. and James Bernard v. Wal-Mart Stores, Inc.*, Case No. 01-0869-DW (W.D. Mo.)
- *E.E.O.C. and William Darnell and Jeremy Fass v. Wal-Mart Stores, Inc.*, Case No. CIV 98-0276 TUC WDB (Ariz.) (the *Darnell/Fass* matter);
- *E.E.O.C. v. Ruthie Gilmore v. Wal-Mart Stores, Inc., d/b/a Wal-Mart Distribution Center*, Case No. C2-01-0094 (S.D. Ohio);
- *E.E.O.C. and Mary Baker v. Wal-Mart Stores, Inc.*, Case No. 01-5030 (W.D. Ark.);
- *E.E.O.C. and Marjorie Arbuckle v. Wal-Mart Stores, Inc.*, Case No. 01-075-A (E.D. Va.);
- *E.E.O.C. v. Wal-Mart Stores, Inc.*, Case No. 5:01-CV-90-BO(3) (E.D. N.C.);
- *E.E.O.C. v. Wal-Mart Stores, Inc.*, Case No. 98 C 7023 (N.D. Ill.);
- *E.E.O.C. v. Wal-Mart Stores, Inc.*, Case No. 99-CIV-043 (Sc) (W.D. N.Y.);
- *E.E.O.C. v. Wal-Mart Stores, Inc.*, Case No. CIV 01-0381 ELM/RLP (D. N.M.);
- *E.E.O.C. v. Wal-Mart Stores, Inc.*, Case No. CV 01-1104 PHX PGR (D. Az.);
- *E.E.O.C. v. Wal-Mart Stores, Inc.*, Case No. CV C-01-0255 CW (N.D. Cal.);
- *E.E.O.C. v. Wal-Mart Stores, Inc.*, Case No. 4:01CV01421DJS (E.D. Mo.); and

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 014

1        • *E.E.O.C. v. Wal-Mart Stores, Inc., d/b/a Wal-Mart Distribution Center #6012; Wal-Mart*

2        *Stores, Inc.*, Case No. CV EP-01-CA-0188-EP (W.D. Tex., El Paso Division).

3        35.     In or about December of 2001, the federal government and WAL-MART entered into a

4   comprehensive "Consent Decree" (hereafter, the Consent Decree) to settle the series of actions

5   between the E.E.O.C. and WAL-MART (other than the *Darnell/Fass* matter). Attached hereto and

6   marked as Exhibit "A" is a true and correct copy of the Consent Decree.

7        36.     Among other things, the Consent Decree required WAL-MART to make substantial

8   changes to its existing way of business that would promote the employment of disabled workers and

9   stop the widespread discrimination against disabled workers. Thus, for example, the Consent Decree

10  required a series of nationwide reforms within WAL-MART including, *inter alia*:

11       • ADA Coordinator: WAL-MART was required to hire an individual with expertise in both

12           the ADA and personnel matters to become WAL-MART's nationwide ADA Coordinator. The

13           ADA Coordinator was required, *inter alia*, to: coordinate WAL-MART's compliance with the

14           ADA; ensure WAL-MART complied with the Consent Decree; assist in developing revised

15           ADA policies and in developing and implementing an ADA Training Program; make all

16           decisions regarding an alleged undue hardship in providing reasonable accommodations;

17           resolve employee disputes regarding a denial of a requested accommodation; and act as a

18           liaison with, and provide reports and updates to, the Special Master who was to oversee

19           compliance with the Consent Degree obligations. Exhibit "A" at ¶¶54-55.

20       • ADA Policies & Procedures: WAL-MART was required to replace its existing ADA and

21           disability policies with a consolidated policy that complies with the ADA and the disability

22           laws, which new policy was, *inter alia*, to: include information about the internal ADA

23           complaint procedures; constitute an ADA-compliant policy and contain ADA-compliant

24           procedures for reasonable accommodations; require WAL-MART managers to engage in the

25           interactive process with employees or applicants to determine an appropriate reasonable

26           accommodation; and include an appeal process for denials of reasonable accommodations.

27           Exhibit "A" at ¶61. Moreover, WAL-MART was required to take significant action in

28           disseminating and publishing its new policies and procedures required by the Consent Decree.

-14-

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 015

1  Exhibit "A" at ¶62. WAL-MART's existing written disability and reasonable accommodation

2  policies and procedures are derived from, and the direct result of, the changes required of

3  WAL-MART under the Consent Decree.

4  • Staff Training & Development: Recognizing the fact that WAL-MART's workforce was

5  inadequately trained to comply with disability laws, the Consent Decree required WAL-MART

6  to provide disability rights and ADA training to its management employees in stores and

7  distribution centers, its personnel managers, and any individual involved in the hiring process

8  at the stores or distribution centers. The required annual disability training was to include,

9  *inter alia*: an overview of the ADA, WAL-MART's obligations under it and applicant or

10  employee rights under it; reasonable accommodations; procedures for addressing reasonable

11  accommodation requests; examples of accommodations; awareness training on issues affecting

12  employees or applicants with disabilities; and WAL-MART's commitment to meeting the

13  ADA's requirements and to engaging in an good faith interactive process with employees or

14  applicants. WAL-MART was also required to provide in-depth ADA training to Regional

15  Personnel Managers annually, and this training was to discuss the interplay between the ADA,

16  Worker's Compensation, and the Family and Medical Leave Act. Thereafter, the Regional

17  Personnel Managers or the ADA Coordinator were to provide similar ADA training in each

18  Region. Likewise, WAL-MART was to develop a Computer-Based Learning Module

19  addressing the ADA, and the Reasonable Accommodation process. WAL-MART was then

20  required to ensure that all participants in the hiring process first reviewed a Computer-Based

21  Learning training module and passed a test on the reasonable accommodation process before he

22  or she was allowed to participate in the hiring process, as well as to include training on the

23  ADA's requirements in its new hire orientation. Exhibit "A" at ¶¶63-73.

24  • Abolition of the "Matrix of Essential Job Functions" and Creation of Appropriate, Non-

25  Discriminatory Job Descriptions: Previously, WAL-MART had used a document entitled

26  "Matrix of Essential Job Functions" (the Matrix) which had the purpose and/or effect of

27  discriminating against disabled workers by disqualifying them from positions as a result of

28  disability-based limitations (without regard to whether or not they could be accommodated in

-15-

REMOVAL EXHIBIT A 016

the positions).  The Consent Decree required WAL-MART to stop using the Matrix or any

similar document in making employment decisions.  As part of the elimination of the Matrix,

WAL-MART was required to develop job descriptions for all jobs in its stores and distribution

centers that were job related and consistent with the job's actual requirements.  Exhibit "A" at

¶¶56-60.

● Posting of Notice: WAL-MART was to post a "Notice of Non-Discrimination" in a

conspicuous location at every store and distribution center nationwide explaining the terms of

the Consent Decree.  Exhibit "A" at ¶75.  A true and correct copy of this "Notice of Non-

Discrimination" is attached as Exhibit "G" to the Consent Decree that is attached hereto as

Exhibit "A."

37.      At bottom, a core purpose of the Consent Decree was to make company-wide changes

within WAL-MART to ensure that it complied with the disability rights laws, ensured proper and non-

discriminatory treatment of disabled workers, and properly trained and educated its workforce

(including both regional and local store management) on how to engage in a proper interactive process

and provide needed reasonable accommodations.  Unfortunately, years later, this case is yet another

example of the fact that, to this day, WAL-MART has still refused to make the company-wide changes

envisioned by the Consent Decree.

2.      **Late-1990s to early-2000s: The *Darnell/Fass* Consent Decree and WAL-MART's violation of the Consent Decree.**

38.      In January 1999, WAL-MART and the federal government entered into a separate,

additional consent decree arising from the action entitled *E.E.O.C. and William Darnell and Jeremy*

*Fass v. Wal-Mart Stores, Inc.*, Case No. CIV 98-0276 TUC WDB (Ariz.).  Attached hereto and marked

as Exhibit "B" is a true and correct copy of this Consent Decree (hereafter referred to as the

*Darnell/Fass* Consent Decree).  The *Darnell/Fass* matter alleged, *inter alia*, that WAL-MART had

failed to make reasonable accommodations regarding hearing-impaired employees or applicants,

including failing to have hearing-impaired accessible materials, manuals, policies, etc.

/ / /

CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A 017**

39.     Under the *Darnell/Fass* Consent Decree, WAL-MART was required, *inter alia*, to: revise its general and specialized training materials to render them accessible and useable by hearing-impaired employees or applicants; develop a set of Computer-Based Learning Modules for hearing-impaired employees or applicants; and install a teletype telephone (TTY) for use by hearing-impaired applicants or employees in the stores into which Darnell and Fass were to be hired.  Exhibit "B" at ¶¶17-19.  WAL-MART was also required to timely report its progress in complying with the *Darnell/Fass* Consent Decree.  Exhibit "B" at ¶28.

40.     Despite agreeing to the foregoing, WAL-MART broke its promise to the federal government and the District Court overseeing *Darnell/Fass*.  Thus, in or about June 2001, the District Court judge presiding over the *Darnell/Fass* matter imposed monetary sanctions of $750,000 against WAL-MART for failing to comply with the *Darnell/Fass* Consent Decree.  *E.E.O.C. v. Wal-Mart Stores, Inc.* (D. Az. 2001) 147 F. Supp.2nd 980, 983.  In support of this sanction, the District Court noted that WAL-MART had "failed to timely report on the steps it has taken in order to comply with the Consent Decree" which made it "difficult to know entirely how it has complied."  *Id.* at 982.  Still, and even absent the proper reporting by WAL-MART, the District Court nonetheless found the following violations by WAL-MART of the *Darnell/Fass* Consent Decree:

> As for providing Intervenors with accommodations, including interpreters for specified training and meetings, and an in-store teletype telephone ("TTY"), the evidence is less clear. While Wal–Mart provided them with interpreters during their training and installed TTYs, no interpreter or alternative means of communication was provided after their training was completed, although one was required for any meeting scheduled 24 hours in advance. As a result, William Darnell had no means of learning what was being said at daily crew meetings, other than hastily written notes, after the fact, by his supervisor. These notes were grudgingly given and often made Mr. Darnell late beginning work. Because the notes given to him were often incomplete, Mr. Darnell did not know changes in stocking procedures, shift times or other issues, making it much more difficult to do his job. Moreover, rather than provide flexible accommodations to Mr. Darnell, it appears that Wal–Mart attempted to "warehouse" Mr. Darnell by only permitting him to work in a certain area of the store, instead of rotating through the various areas like his co-workers. This led to his being viewed as different or less-abled by his co-workers and customers. Mr. Darnell has since left his employment with Wal–Mart. Mr. Fass has also left Wal–Mart.
>
> Moreover, it is clear that Wal–Mart has failed to comply with the letter of the Consent Decree concerning the training of its staff in the requirements of the ADA and in communication methods with the hearing-impaired. This training was to have occurred within 180 days of the signing of the Decree. Wal–Mart has claimed that the legal portion of the ADA training was not completed in a timely fashion

CLASS ACTION COMPLAINT
REMOVAL EXHIBIT A 018

because the staff attorney who had been slated to conduct the training had an extended maternity leave. This explanation is insufficient for a company as large as Wal–Mart, who in addition to corporate counsel has retained counsel in Arizona who are perfectly capable of conducting such training. Additionally, Wal–Mart failed to contact any of the three outside trainers named in the Consent Decree to train personnel, and videotape their training session, so that it could be shown to the Intervenors' co-workers. This was to have been done within 30 days of the signing of the Decree. Considering that this training was intended to aid Intervenors' after beginning work with Wal–Mart, the company's non-compliance is inexcusable.

Likewise, Wal–Mart has failed to translate its CBLs as it agreed to do. Although there is some evidence that Wal–Mart asked if it could translate the CBLs into English text, rather than include an ASL translation, there is no evidence that Wal–Mart made a formal request to the Plaintiff or filed a motion to modify the Decree before the deadline for compliance. *Id.* at 982-983.

41.     Based on the above findings, the District Court, *inter alia*: (a) imposed sanctions of $750,000 on WAL-MART, representing $100 per day for each of the 22 stores in a specified geographic region for each of the 341 days that WAL-MART had been in violation of the *Darnell/Fass* Consent Decree; (b) awarded reasonable attorneys fees and costs to the EEOC and others whose work had been necessary to ensure full compliance with the *Darnell/Fass* Consent Decree; (c) ordered WAL-MART to prepare, film and air a television commercial stating the purposes of the ADA, that WAL-MART has in the past violated the ADA, and referring people who believe that they have been discriminated against on the basis of disability to the E.E.O.C. and the Arizona Center for Disability Law; and (d) extended the duration of the *Darnell/Fass* Consent Decree for an additional eighteen (18) months. *Id.* at 983-984.

> **3.     2005: During the term of the Consent Decree, WAL-MART continues to discriminate and, indeed, is found by a federal jury to have discriminated against a disabled worker. The District Court affirmed the jury's finding of discrimination and its imposition of punitive damages against WAL-MART.**

42.     During the terms of the Consent Decree, WAL-MART continued to discriminate against disabled workers in violation of both the law and the explicit prohibitions set forth in the Consent Decree. As just one example, in or about early- to mid-2005, a federal jury found that WAL-MART discriminated against a disabled worker, subjected him to a hostile work environment, failed to provide him with reasonable accommodations and asked him unlawful questions as part of the hiring process. *Brady v. Wal-Mart Stores, Inc.* (E.D. N.Y. 2006) 455 F.Supp.2d 157, 164. The jury's verdict

-18-

REMOVAL EXHIBIT A 019

1 | included $5,000,000 in punitive damages, $2,500,000 in compensatory damages, and $9,114 for lost

2 | back pay, resulting in a total verdict of over $7,500,000. *Ibid.*

3 |     43.     The District Court judge who presided over the trial had the following to say about

4 | WAL-MART and observed with great prescience the fact that the federal disability discrimination

5 | law's caps on the amount of punitive damages rendered federal law an ineffective deterrent against

6 | WAL-MART's continued abuse of disabled workers:

7 |     Despite entering into a consent decree to settle previous complaints of ADA violations,
Wal-Mart asked Brady the same type of prohibited questions it had previously agreed to

8 | abandon, and its employees were entirely ignorant of the anti-discrimination policies that
Wal-Mart had previously agreed to disseminate. Moreover, WAL-MART's witnesses

9 | virtually to a person displayed a surprising inability or unwillingness to acknowledge
Brady's disability, which was apparent to all others. Observing the testimony, I frankly

10 | found several of WAL-MART's witnesses to be wholly incredible in attesting to ignorance
of Brady's disability. The most generous conclusion I could draw from the testimony in

11 | this case—and the conclusion I did draw—was that the Wal-Mart employees who testified
were well-intentioned people whom the company willfully failed to provide with sufficient

12 | training to abide by the anti-discrimination law.

13 |     The result was that Brady was subjected to the kind of discrimination against the
disabled that both the law and the prior consent decree were designed to prevent.

14 | Brady will receive adequate compensation for that discrimination. But in the
absence of the effective punitive sanctions that are available against smaller

15 | companies, it appears unlikely that the award in this case can suffice to restrain
Wal-Mart from inflicting similar abuses on those who may be doomed to follow in

16 | Brady's footsteps. *Brady v. Wal-Mart Stores, Inc.* (E.D. N.Y., June 21, 2005) CV-
03-3843 (JO) [2005 WL 1521407, at pp. *4-5].

17 |

18 |     Moreover, in affirming the imposition of punitive damages against WAL-MART, the District

19 | Court specifically noted that, given the Consent Decree obligations which were admitted into evidence

20 | in the trial, WAL-MART was obviously aware of its obligations under the disability laws yet still had

21 | not adequately trained its employees on compliance with the requirements of these laws. *Brady*, 455

22 | F.Supp.2d at 178-179.

23 |

24 |     4.     **November 2005: The month before the natural expiration of the Consent Decree,
WAL-MART's Executive Vice President of Benefits (Susan Chambers) pitches to**

25 | **WAL-MART's Board of Directors strategies to continue WAL-MART's corporate
culture of discrimination against disabled workers. Instead of disciplining**

26 | **Chambers and repudiating her discriminatory stance, WAL-MART ratifies her
conduct and promotes Chambers to become WAL-MART's Executive Vice**

27 | **President for WAL-MART's Global People Division.**

28 | ///

REMOVAL EXHIBIT A 020

44.     The duration of the Consent Decree was four (4) years from the date of its entry. Exhibit "A" at ¶87. Thus, it was set to expire naturally by its terms in December 2005. Exhibit "A" at ¶87 and p. 26. As the Consent Decree was approaching its natural expiration, WAL-MART already had in place a plan to ramp up its discriminatory practices and its corporate culture of discrimination.

45.     In November 2005 – the very month before the Consent Decree was to expire – at the WAL-MART Board of Directors Retreat for the Fiscal Year 2006, Susan Chambers (WAL-MART's then-Executive Vice President of Benefits) presented a memo and made a presentation to the Board (hereafter, the Chambers Memo or the Memo) that was the result of months of work by Chambers and her fifteen-person team drawn from across the company.  Attached hereto and marked as Exhibit "C" is a true and correct copy of the Chambers Memo.

46.     The Chambers Memo reveals a corporate culture of discrimination against, and disregard for, the rights of disabled workers reaching, and spreading down from, the highest levels within WAL-MART.  It contains many statements reflecting discriminatory animus, and shows a corporate culture of not only tolerance of – but even explicit encouragement of – discrimination against disabled workers and disregard of their rights.  In her memo, Executive Vice President Chambers directly advocated to the Board of Directors for continued – indeed, increased – discrimination against disabled workers.

47.     In her Memo to the Board, Executive Vice President Chambers explicitly urged continued employment-decision-making designed to discourage "unhealthy" (i.e., disabled) workers from seeking or continuing to work for WAL-MART while, corresponding, to encourage "healthy" (i.e., non-disabled) workers to seek and continue to work for WAL-MART.

48.     Chambers lamented that "the least healthy, least productive Associates are more satisfied with their benefits than other segments and are interested in longer careers with Wal-Mart." Exhibit "C" at p. 6. Showing the corporate desire to eliminate disabled workers from its workforce, Chambers called it "[m]ost troubling" that the "least healthy, least productive Associates are more satisfied with their benefits than other segments and are interested in longer careers with Wal-Mart." Exhibit "C" at p. 1, 2nd bullet point.  Conversely, Chambers disappointingly concluded that the "healthy" (i.e., non-disabled) workers "were planning shorter careers with Wal-Mart."  Exhibit "C" at

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 021

1   p. 6. Chambers' Memo posited that "healthy" workers are the "most attractive Associate segment
2   because they cost WAL-MART less in terms of healthcare expenses and are more productive in their
3   jobs," and she advocated for taking steps to attract and retain "healthy Associates" while taking steps
4   to discourage or dissuade supposedly "unhealthy" ones from applying for positions at or continuing to
5   work for WAL-MART. Exhibit "C" at pp. 3 & 6.

6   49.   As part of the efforts to discourage disabled workers and to attract and retain non-
7   disabled workers, Chambers reviewed a series of so-called "bold steps." Exhibit "C" at pp. 11-16.
8   Included within the so-called "bold steps" was taking action that would be viewed as "particularly
9   attractive to the healthy, productive Associate segment" so as to encourage non-disabled workers to
10  want to work, and remain working, for WAL-MART. Exhibit "C" at p. 12.

11  50.   Another of Chambers' "bold steps" was to "[r]edesign ... aspects of the Associate
12  experience, such as job design, to attract a healthier, more productive workforce." Exhibit "C" at pp.
13  3, 14 & 26. The Memo directly states that "Wal-Mart should seek to attract a healthier workforce,"
14. and one way to do this was to "[d]esign all jobs to include some physical activity (e.g., all cashiers do
15  some cart gathering)...." Exhibit "C" at p. 14. In other words, while still under the obligations of the
16  Consent Decree – a Consent Decree that focused in part on the improper use of job descriptions (the
17  Matrix) to weed-out disabled workers – WAL-MART's highest levels of executive management was
18  determined to continue to design job descriptions in a way likely to weed-out disabled workers.

19  51.   The Memo advocates for implementing other measures to retain the "healthier
20  workforce" in part because doing so will result in "lower absenteeism through fewer sick days, and
21  higher productivity." Exhibit "C" at p. 14. The Memo concludes that "[i]t will be far easier to attract
22  and retain a healthier workforce than it will be to change behavior in an existing one" and states that
23  "[t]hese moves will also dissuade unhealthy people from coming to work at Wal-Mart." Exhibit "C"
24  at p. 14. The Memo suggests that "[e]ven a modest shift in WAL-MART's ability to attract and retain
25  a healthier workforce could result in significant savings: $220 million to $670 million in FY 2011."
26  Exhibit "C" at p. 14. The Memo concludes that as a result of its strategies and policies WAL-MART
27  "will be more effective at attracting and retaining the healthy, productive workforce Wal-Mart wants"
28  and states that "[t]aken together the limited-risk initiatives and the bold steps create a powerful set of

-21-

1    advantages for Wal-Mart." Exhibit "C" at p. 17.

2        52.     Within her Memo, Chambers herself acknowledged that her strategies will have lasting

3    impact for many years – indeed, decades into the future. Exhibit "C" at pp. 12 & 14 (recognizing

4    fiscal impact of recommendation through year 2011).

5        53.     Chambers' presentation of her Memo to the Board in November 2005 was not the first

6    distribution of the Memo's culture of discrimination throughout WAL-MART. Rather, in July 2005,

7    before presenting her Memo to the Board, Chambers presented the same information to WAL-

8    MART's Executive Benefits Steering Committee which "received the recommendations

9    enthusiastically and asked that [Chambers' team] share them widely within WAL-MART, something

10    [Chambers' team had] begun to do." Exhibit "C" at p. 3. Thus, by its own admission, the

11    recommendations set forth in the Chambers Memo circulated "widely within Wal-Mart" even before

12    they were presented to the Board. *Ibid.*

13        54.     But what is most telling about the Chambers Memo is not just the clear evidence within

14    it of a corporate culture of discrimination reaching WAL-MART's highest levels of executive

15    management. What is even more shocking is WAL-MART's reaction to it. First, as stated above,

16    WAL-MART's Executive Benefits Steering Committee "received the recommendations

17    enthusiastically and asked that [Chambers' team] share them widely within Wal-Mart, something

18    [Chambers' team had] begun to do." Exhibit "C" at p. 3. Second, and even more outrageous, WAL-

19    MART as a company did nothing to repudiate the discriminatory mind set found within Chambers'

20    Memo. Instead, it rewarded Chambers with a promotion.

21        55.     The Chambers Memo was leaked to the press in real-time and it set off a firestorm of

22    news articles. Stories ran about the Memo and its discriminatory animus in major media outlets like

23    the New York Times, Newsweek, USA Today and CNN. For example, on October 26, 2005, CNN ran

24    a story headlined "Wal-Mart memo: Unhealthy need not apply." One article, which published on

25    www.TheLedger.com, was titled "Wal-Mart Memo 'A Cesspool of Violations,' Lawyer Says." Given

26    the widespread nature of the press activity following the leak of the Memo, it is clear that the Memo's

27    discriminatory nature came to the attention of all of WAL-MART's upper executive management.

28    Indeed, articles about the Memo quote some of WAL-MART's highest-ranking executives.

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 023

56.     Nonetheless, WAL-MART took no meaningful action to repudiate the corporate culture of discrimination found embedded within Chambers' Memo.  WAL-MART did not discipline Chambers in any way, shape or form for advocating for a culture that tolerates and even encourages discrimination against disabled and older workers. · Instead, in April 2006, within a matter of months of her presentation to the Board in November of 2005, WAL-MART promoted Chambers to its Executive Vice President for the Global People Division – in effect, the highest-ranking human resource professional worldwide within WAL-MART.

57.     Ironically, and tragically for disabled workers and the members of the Classes, to this day, and despite her articulated bias against attracting and retaining disabled and longer-tenured (older) workers, WAL-MART boasts that Chambers "is responsible for managing, attracting and retaining the nation's largest private workforce" and that Chambers' responsibilities include "human resource ... culture" and that she "is also responsible for Walmart's Global Diversity Office."  Exhibit "D."  Upon information and belief, WAL-MART not only promoted Chambers, it also implemented or continued to use her Memo's strategies.

**5.      WAL-MART's continued discrimination, and continued and re-invigorated corporate culture of discrimination, following the Chambers Memo to the present.**

58.     The continued corporate culture of discrimination against disabled workers at WAL-MART, including the members of the Classes, is seen in various policies or practices WAL-MART continues to maintain to this day despite its clear knowledge and awareness of its obligation to comply with the disability laws as repeatedly confirmed by the series of consent decrees WAL-MART has entered into with the federal government.

59.     As just one example, to this day, WAL-MART continues to maintain an informal policy or practice under which it maintains it has the right to replace employees who require medical leaves that last longer than the twelve (12) weeks guaranteed by the Family and Medical Leave Act and/or the state law equivalents (like the California Family Rights Act).  WAL-MART's policy ignores and violates its independent obligation to grant a leave of absence under the disability laws separate and apart from the medical leave laws.  Under both federal and state law, a company must provide a

-23-

CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A 024**

1    reasonable accommodation leave of absence beyond the statutory leave laws' twelve weeks of leave

2    unless doing so would impose an undue hardship on the company. Moreover, the Consent Decree

3    required training on the interplay between the statutory leave laws and the separate and distinct

4    disability accommodation laws, and it further required during its term that WAL-MART have its ADA

5    Coordinator make all decisions regarding undue hardship to ensure that the company properly

6    evaluated its own alleged claims of undue hardship. Exhibit "A" at ¶¶54-55 & 63-73. Still, to this

7    day, WAL-MART continues to engage in this illegal practice of replacing employees on leave without

8    conducting any real undue hardship analysis. Not only does this practice violate the law, it also sends

9    the message to management that the company condones and encourages forcing out disabled workers

10    when given the opportunity to do so – rather than permitting them adequate time to heal and recover

11    from their disabilities.

12        60.    As another example, when an employee with a disability is unable to continue

13    performing the essential functions of his or her current position, the disability accommodation laws

14    require that the employer give preferential treatment and make affirmative efforts to place the

15    employee in another open vacant position for which the employee is qualified. WAL-MART's

16    policies in this regard, however, violate the law's clear requirements.

17        61.    As another example, WAL-MART's formal accommodation process itself regularly

18    violate's the law's requirement of a good-faith, timely interactive process. The interactive process

19    required by law envisions a back-and-forth verbal exchange and discussion between the employee and

20    the employer in a mutual effort to determine whether effective accommodations can be provided.

21    WAL-MART created its so-called Accommodation Service Center (ASC) supposedly to facilitate the

22    interactive process and provision of reasonable accommodations to its employees. However, in reality,

23    WAL-MART's ASC's process regularly violates the law's requirements. Typically, ASC will

24    exchange written materials with the employee but nobody from ASC engages in an actual, verbal

25    interactive process with the employee.

26

27    ///

28    ///

-24-

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 025

F.     **WAL-MART and HEALTHWORKS Join Forces to Further Discriminate Against WAL-MART'S Disabled and/or Injured Employees, While Violating Their Constitutional Rights to Privacy as Well, Through Unlawful Drug Testing Policies and Practices**

62.     At all times alleged herein, WAL-MART has continued its efforts to discriminate against disabled employees, including the members of the Classes, by maintaining an unlawful drug and/or urine testing policy for the purposes of terminating disabled and/or injured employees.

63.     At all times alleged herein, WAL-MART has entered into agreements with HEALTHWORKS to provide all of WAL-MART'S drug and urine testing of its employees in California. As part of this agreement by HEALTHWORKS to provide WAL-MART all of its drug and urine testing in California, HEALTHWORKS has explicitly and/or implicitly agreed to enforce all of WAL-MART'S practices, policies and/or procedures related to the drug and/or urine testing of WAL-MART'S employees and, specifically, those injured while at work for WAL-MART, including the members of the Classes.

64.     At all times during the relevant time period, WAL-MART and HEALTHWORKS have maintained unlawful policies and practices throughout all of WAL-MART'S stores in California which requires that WAL-MART'S employees who are injured at work, including members of the Classes, immediately submit to a drug and/or urine test through HEALTHWORKS within 24 hours of such an incident without any evidence, or attempt to gather evidence, which may demonstrate that the employee was intoxicated at the time of the incident. Pursuant to these policies and practices, if the employee does not so submit to the urine or drug test with HEALTHWORKS within that 24 hour period, the employee will be automatically terminated by WAL-MART. Attached hereto and marked as Exhibit "D" is a true and correct copy of WAL-MART'S drug testing policy related to workplace injuries in effect throughout California during the relevant time period.

65.     At all times, these policies, procedures and practices maintained by WAL-MART and HEALTHWORKS were and are illegal because they ignores WAL-MART'S obligations under California law to provide reasonable accommodations to employees who are disabled. In other words, these policies and practices ignores that an injured and/or disabled employee, especially one who requires medical leave and/or immediate medical attention, including the members of the Classes, may

-25-

**REMOVAL EXHIBIT A 026**

1 not be able to physically make themselves available to take an immediate urine or drug test with

2 HEALTHWORKS due to their disabilities.

3    66.    At all times, these policies, procedures and practices maintained by WAL-MART and

4 HEALTHWORKS were and are also illegal because the requirement that such disabled and/or injured

5 employees submit to a drug test, without good cause or reasonable suspicion that the employee was

6 under the influence of any intoxicant, violates such employee right to privacy as provided to them by

7 the Article I, §1 of the California Constitution, as well as relevant legal decisions and holdings by the

8 Occupational Safety and Health Administration and a number of judicial forums.

9    67.    As evidenced by various lawsuits in California based on this unlawful drug test policy,

10 including those filed during and/or since KENNY'S employment, WAL-MART and

11 HEALTHWORKS were aware that such policies and practices were unlawful under California law.

12 However, despite their knowledge of the illegality of such policies and practices, WAL-MART and

13 HEALTHWORKS continued to engage in such unlawful conduct resulting in continued violations of

14 the privacy rights of WAL-MART's employees and HEALTHWORKS patients, including KENNY

15 and the members of the Classes.

16    68.    While enforcing these unlawful policies, WAL-MART and HEALTHWORKS required

17 KENNY and the members of the Classes to immediately submit to an unlawful drug and/or urine test

18 within 24 hours of them suffering their workplace injuries within the scope of their employment with

19 WAL-MART. Where such members of the classes refused and/or failed to immediately submit to such

20 unlawful drug and/or urine tests, pursuant to WAL-MART'S policies, they were immediately

21 terminated. In so doing, WAL-MART refused to reasonable accommodate members of the Classes

22 who could not immediately submit to such tests with HEALTHWORKS due to their injuries and/or

23 disabilities, and their requests for reasonable accommodations in the form of medical care or treatment.

24 Where other members of the Classes submitted to such unlawful drug and/or urine tests with

25 HEALTHWORKS, their privacy rights were unlawfully violated and/or they were then too terminated

26 as a result.

27 / / /

28 / / /

REMOVAL EXHIBIT A 027

69.     At all times, such knowing and intentional unlawful conduct by WAL-MART and HEALTHWORKS, as described herein, directly led to KENNY'S and the members of the Classes' terminations and/or a violation of their privacy rights, and the damages they have suffered as a result.

### KENNY'S INDIVIDUAL ALLEGATIONS

**A.     KENNY Becomes Disabled and Notifies WAL-MART of His Disability**

70.     KENNY was employed by WAL-MART as a regular employee from July 2015 through January 2016. Throughout his employment with WAL-MART, KENNY worked within the front end of WAL-MART's store located at 1120 South Mt. Vernon Avenue, Colton, California 92324. While working in the front end, KENNY worked with maintenance, organizing and gathering carts, performing carry outs, performing carry ins and performed express refunds. At all times while performing such duties for WAL-MART's benefit, KENNY was a satisfactory employee.

71.     After working for WAL-MART for approximately two to three months, in our about late September 2015 or early October 2015, KENNY became disabled as a result of suffering a workplace injury within the course and scope of his employment. On this day, KENNY injured his back while pushing carts and lifting a cabinet in customer service, all for WAL-MART's benefit.

72.     As a result of his workplace injury, KENNY notified his direct supervisor, who in turn told KENNY to speak to WAL-MART's personnel department. Immediately thereafter, KENNY was allowed to leave work to seek medical treatment.

**B.     KENNY Begins Requesting Reasonable Accommodations for His Disability**

73.     On the same day as his initial workplace injury in late September 2015 or early October 2015, after being permitted to leave work early to seek medical treatment, KENNY then saw his personal physician. KENNY'S doctor then diagnosed him with a back injury and took KENNY off work for the next few days. KENNY'S physician also placed him on light duty and provided KENNY

-27-

REMOVAL EXHIBIT A 028

1   with lifting restrictions of no lifting over 10 pounds. KENNY immediately notified WAL-MART that

2   his doctor had taken him off of work, and that he had been placed on such work restrictions, thereby

3   requesting from WAL-MART reasonable accommodations in the form of medical leave, light duty and

4   no lifting over 10 pounds.

5          74.     In or about early October 2015, after suffering his workplace injury and completing his

6   short stint of medical leave, KENNY returned to work for WAL-MART. Upon his return to work,

7   KENNY provided WAL-MART a doctor's note excusing his absence, confirming KENNY'S

8   disability, and formally confirming KENNY'S requests for reasonable accommodations in the form of

9   light duty and a work restriction of no lifting over 10 pounds.

10

11   **C.    WAL-MART Unlawfully Denies KENNY'S Requests for Accommodation**

12

13          75.     After turning in his medical paperwork to WAL-MART and making the request for an

14   accommodation of no lifting over 10 pounds, WAL-MART refused to accommodation KENNY.

15   Instead, WAL-MART consistently denied KENNY'S requests for accommodations and refused to

16   accommodate him, despite its ability to do so without suffering any undue hardship.

17          76.     At all times, WAL-MART was capable of, and could have, provided KENNY

18   numerous positions and/or tasks, whether in the same store or in another store within the same

19   geographic region, that would have accommodated KENNY without forcing WAL-MART to suffer

20   any undue or unreasonable hardship. However, instead of providing said accommodations,

21   acknowledge KENNY'S work restrictions or providing KENNY with any alternative duties, WAL-

22   MART forced KENNY to keep performing the same job functions that he worked prior to becoming

23   disabled, thereby also forcing KENNY to continue to lift over 10 pounds in order to remain employed

24   and in direct violation of his work restrictions as provided by his doctor.

25

26   / / /

27   / / /

28   / / /

**REMOVAL EXHIBIT A 029**

1  **D.     WAL-MART Begins Unlawfully Retaliating Against KENNY Due to Becoming Disabled**
2  **and Due to Requesting Reasonable Accommodations**

3          77.     As a result of being denied his requests for reasonable accommodation, KENNY

4  complained numerous times to his direct supervisors regarding WAL-MART's failure to accommodate

5  him. Despite his complaints, WAL-MART kept providing KENNY with work assignments that

6  directly violated his work restrictions and which failed to accommodate his disability, only causing

7  more physical harm to KENNY.

8          78.     After refusing him reasonable accommodations and ignoring his complaints regarding

9  the same, WAL-MART began retaliating against KENNY due to his requests for accommodations

10  and/or him informing WAL-MART of his disability. While prior to suffering his work place injury and

11  prior to becoming physically disabled, KENNY had regularly received full-time hours, at or around 40

12  hours of work per week, immediately after becoming disabled and requesting reasonable

13  accommodation, WAL-MART retaliated against KENNY by reducing KENNY'S scheduled work

14  hours and denying him the income that he had come to rely on previously. Around mid to late October

15  2015, WAL-MART began cutting KENNY'S hours down to 20 or so hours of work per week.

16          79.     After realizing his hours were being cut, KENNY then submitted a complaint to WAL-

17  MART. In or about later October 2015 or early November 2015, KENNY complained to an assistant

18  manager at the store about his hours being cut. In response, this assistant manager lied to KENNY and

19  told him that the store was cutting hours of all the employees. However, such an explanation and/or

20  rationale was clearly a pretext to discriminate against KENNY on the basis of his disability. At that

21  time, KENNY observed that no other regular employees' hours were being cut and, in fact, most

22  employees were receiving more hours. Moreover, the holiday season was approaching. As a result,

23  WAL-MART had actually began increasing the hours of its regular employees and, additionally, hiring

24  new employees to cover for all the additional work that typically came with the holiday shopping

25  season between late October and early January.

26          80.     Despite KENNY'S complaints about his hours being reduced, WAL-MART continued

27  to discriminate and/or retaliate against KENNY for becoming disabled and/or request reasonable

28  accommodations for his disability. After suffering his workplace injury and becoming disabled, from

-29-

**REMOVAL EXHIBIT A 030**

1   October 2015 through the last month of his employment in January 2016, KENNY'S hours decreased
2   from a typical 40 hour work week to as few as 18 hours in one week. In retaliating and discriminating
3   against KENNY, WAL-MART effectively demoted KENNY from full-time hours to part-time hours,
4   and deprived him of a significant amount of income for no reason other than his disability and/or
5   requests for reasonable accommodations.

6

7   **E.      KENNY Suffers a Second Workplace Injury, Becoming Further Disabled**

8

9          81.    On or about January 15, 2016, KENNY suffered a second workplace injury while
10  performing work for WAL-MART's benefit within the course and scope of his duties. On this day,
11  KENNY went to assist a couple of WAL-MART's customers who had brought a safe back to WAL-
12  MART to return. KENNY asked for assistance from his supervisors to bring the safe off of the
13  customers' truck, but no one would assist him and he was left to complete the task on his own. Thus,
14  in order to avoid potential injury as much as he could while performing his job to WAL-MART's
15  expectations, KENNY obtained a dolly to assist him in unloading the safe and transporting it.
16  However, while unloading the safe from the customers' truck, KENNY re-injured his back.

17

18  **F.      KENNY Requests Immediate Medical Treatment Due to His Second Workplace Injury,**
    **But is Denied His Request and Forced to Fill Out Paperwork Instead**
19

20         82.    After re-injuring his back, KENNY immediately notified two of WAL-MART's
21  managers, KENNY asked to immediately see WAL-MART's doctors at its medical clinic, but the
22  assistant manager then told KENNY to sit down and fill out an in-store injury report instead.
23         83.    While in immense pain, KENNY filled out the injury report as WAL-MART
24  demanded. KENNY then again asked if he could see a doctor due to his pain. However, a manager and
25  WAL-MART's personnel director then told KENNY that if he wanted to see a doctor, he would have
26  to fill out a different workplace injury form. As such, per their demand, KENNY, while still in
27  immense pain, filled out this second workplace injury form. After doing so, KENNY again asked if he
28  could then see a doctor due to his pain, but, again, his request was rejected. Instead, he was told he

-30-

CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A 031**

1 would have to take a lunch, since he was still on the clock, and that they would complete the necessary

2 paperwork once he returned from lunch which would then permit him to see WAL-MART's doctor.

3    84.    For the next half of an hour, KENNY remained in pain, but waited with the expectation

4 that, after his half of an hour lunch, he would then immediately be sent to see one of WAL-MART's

5 doctors. However, upon his return, a manager and WAL-MART's personnel director simply told

6 KENNY that he had to keep waiting because they still needed to finish up his paperwork. Because

7 KENNY continued to be in immense pain and hadn't been able to see a doctor for more than hour

8 since suffering his injury, KENNY then asked another member of WAL-MART's personnel office if

9 he could leave to see his own doctor due to being in such pain. WAL-MART's member of the

10 personnel department then told KENNY that if he felt he needed immediate medical attention, he

11 could leave and obtain it. As such, after receiving permission to leave, KENNY left to go see a doctor

12 and receive the medical attention that WAL-MART was refusing to provide him.

13

14 G.    KENNY Requests a Reasonable Accommodation in the Form of Medical Leave as a
       Result of His Second Workplace Injury at WAL-MART

15

16    85.    Immediately after receiving permission to leave WAL-MART to seek medical attention,

17 KENNY then went to the emergency room at a nearby hospital. Upon receiving medical attention,

18 KENNY'S physician diagnosed him with a lumbar spine sprain and thoracic spine sprain. As such,

19 KENNY again was diagnosed as being physically disabled. At that time, KENNY'S physician also

20 took KENNY off of work from for three days, from January 15, 2016 through January 18, 2016.

21    86.    First thing the next morning of January 16, 2016, less than 24 hours since he had been

22 injured on the job the day prior, KENNY then called WAL-MART on the telephone and spoke to one

23 of his managers. On the phone with one of his supervisors, KENNY explained to WAL-MART about

24 how he had left to see his own doctor the previous afternoon, after receiving permission to do so,

25 because he was in such pain and needed immediate medical attention that he was not being provided.

26    87.    On the morning of January 16, 2016, in communicating to WAL-MART that he had,

27 again, become disabled, KENNY further explained that his doctor had diagnosed him a lumbar spine

28 sprain and thoracic spine sprain, that he had doctor's note he wanted to turn and that his doctor's note

CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A 032**

1    took him out of work from January 15, 2016 through January 18, 2016. KENNY then asked when he

2    could come in to provide the doctor's note and when he could see WAL-MART's own doctor. In

3    response, the manager told KENNY that it was "too late" to see WAL-MART's doctor and that

4    KENNY should call in to speak to the assistant manager sometime between noon and 12:30 p.m.

5        88.    Between 11:00 a.m. and 1:00 p.m. on January 16, 2016, still less than 24 hours since his

6    injury, KENNY called in to WAL-MART and asked to speak to the assistant manager approximately

7    six times. However, each time KENNY called in during this 2-hour time period, WAL-MART

8    informed KENNY that the assistant manager was either busy or just unavailable.

9

10   **H.**     **WAL-MART Unlawfully Discriminates Against KENNY, Retaliates Against KENNY and**
         **Terminates KENNY Due to His Disabilities and/or His Requests for Reasonable**

11          **Accommodations**

12

13        89.    Because KENNY had been unable to speak with the assistant manager despite calling in

14    numerous times the previous day, the next day, on January 17, 2016, KENNY then came back to

15    WAL-MART's store in hopes of being able to speak with the assistant manager.

16        90.    Upon arriving to WAL-MART on the morning of January 17, 2016, KENNY swiped

17    his ID card to clock in, but the badge did not work. As such, KENNY then went to the assistant

18    manager's office to find out what was going on and to speak with the manager. After arriving at the

19    assistant manager's office in the back of the store, both the assistant manager and the manager

20    KENNY had spoken to the prior morning were present. KENNY explained that his badge was not

21    working and that he had tried to contact the assistant manager multiple times the previous day.

22        91.    After waiting approximately 15 minutes, the two managers called KENNY into the

23    personnel office. Inside the office, they explained to KENNY that he had been terminated because he

24    did not take a urine test within 24 hours after his injury. In response, KENNY immediately explained

25    that their explanation for his termination did not make sense, especially since he had called into work

26    to see WAL-MART's doctor the prior morning, which was well before 24 hours had passed since his

27    workplace injury occurred. KENNY explained that the manager had told him the prior morning it was

28    "too late" to see WAL-MART's doctor and that KENNY had tried to call in multiple times thereafter

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 033

1  without success. In turn, the assistant manager merely confirmed that it was still "too late" to see

2  WAL-MART's doctor and, likewise, confirmed KENNY'S termination.

3       92.    At all times, KENNY could have performed all of the essential functions of the his

4  position or another available position at WAL-MART's store, or another store within the same

5  geographic region, to WAL-MART's satisfaction with a reasonable accommodation. Moreover, WAL-

6  MART has maintained vacant positions at its stores which could have been provided to KENNY and

7  which KENNY could have worked to WAL-MART's satisfaction with a reasonable accommodation.

8  However, to date, WAL-MART has never offered KENNY an accommodation at KENNY'S store nor

9  a vacant position at another one of its stores. Instead, WAL-MART discriminated and retaliated

10  against KENNY by terminating him.

11

12  **I.     WAL-MART'S History of Disability Discrimination and Unlawful Conduct in**

13  **Intentionally Maintaining Discriminatory Policies and Intentionally Refusing to Train its Employees as to Disability Laws, Created the Hostile Work Environment that KENNY**

14  **was Subjected to and Which Directly Led to Him Being Discriminated Against on the Basis of His Disabilities**

15

16       93.    At all times, a substantial factor in KENNY'S termination was: (a) WAL-MART's

17  continued refusal to properly train and educate its workforce on disability rights in the workplace; and

18  (b) WAL-MART's continued refusal to have a system in place that facilitates the provision of

19  reasonable accommodation to its employees in a way that is consistent with the disability

20  accommodation laws. Despite being provided numerous opportunities over the last decade and a half

21  to cease such harmful practices through numerous state and federal lawsuits, consent decrees and/or

22  agreements, WAL-MART has ignored such opportunities, continued to refuse to change its practices

23  that harm its disabled employees and continued to do as little as possible to prevent disability

24  discrimination at its stores, including at the store KENNY worked at.

25       94.    Through WAL-MART's historical and ongoing refusal to change and/or remedy its

26  practices and policies that harm disabled employees, such as KENNY, while, at all times, knowing that

27  its practices, policies and procedures result in such adverse affects, it is clear that WAL-MART does

28  not merely fail to take all reasonable steps to prevent disability discrimination in the workplace, but,

REMOVAL EXHIBIT A 034

1   even worse, WAL-MART intentionally creates a workplace that will discriminate against disabled

2   employees, all in hopes of increasing its own profits. It is this intentional conduct that directly led to

3   KENNY'S circumstances and the unlawful conduct WAL-MART subjected her to.

4       95.     To this day, WAL-MART still engages in such unlawful conduct despite being aware,

5   and continuing to be aware, that its established policies and its continuing refusal to train its

6   employees, as described above, still lead to disabled employees being discriminated against. To this

7   day, WAL-MART still intentionally engages in such discriminatory conduct and refuses to act to

8   protect its disabled employees, such as KENNY, all in an effort to encourage and/or ensure that it rids

9   itself of disabled employees pursuant to its belief that such disabled employees are more costly and/or

10  are less productive than "healthy" employees.

11      96.     In short, the very core issues that the federal government addressed with WAL-MART

12  years ago still plague the company to this day and, in fact, directly led to KENNY being discriminated

13  against and unlawfully terminated by WAL-MART based on her disabilities and/or requests for

14  reasonable accommodations. WAL-MART's general policies which discriminate against disabled

15  employees such as KENNY, as well as its intentional failure to train its employees as to relevant

16  disability laws, directly resulted in the hostile work environment,, discrimination and retaliation

17  KENNY was made to suffer as a result of her disabilities.

18

19  **J.    WAL-MART'S Requirement that KENNY Submit to a Drug Test Within 24 Hours of
         His Workplace Injury Amounts to an Unlawful Practice and an Unlawful Invasion of
20       KENNY'S Privacy Rights by WAL-MART and HEALTHWORKS**

21

22      97.     WAL-MART's purported reason for terminating KENNY, even if true, is also illegal as

23  a result of WAL-MART'S and HEALTHWORKS' unlawful urine and/or drug test policies.

24      98.     At the time of his workplace injury, KENNY was disabled. Due to his disability,

25  KENNY was not immediately able to submit to a drug test with HEALTHWORKS and, instead,

26  informed WAL-MART that he needed immediate medical treatment, thereby requesting a reasonable

27  accommodation, which WAL-MART refused to provide him. Accordingly, by terminating KENNY as

28  a result of failing to immediately submit to to a drug test, WAL-MART discriminated against KENNY

REMOVAL EXHIBIT A 035

1  for being disabled and/or unlawfully denied KENNY the reasonable accommodation he had requested,
2  terminating him instead. Such discriminatory animus by WAL-MART is especially obvious in light of
3  the fact that, while KENNY could not immediately submit to the drug or urine test, he still made
4  himself available to take a drug test within 24 hours of his injury, yet was terminated by WAL-MART
5  regardless for refusing to immediately submit to the drug test with HEALTHWORKS.

6      99.    WAL-MART's requirement that KENNY submit to a drug test, without good cause or
7  reasonable suspicion that he was under the influence of any intoxicant, was also illegal because it
8  violated KENNY'S rights to privacy as provided to him by the California Constitution, as well as
9  relevant legal decisions holdings by the Occupational Safety and Health Administration and various
10 other legal forums. Due to KENNY'S privacy rights, at no time, without the gathering of specific,
11 objective facts that create a rational inference that KENNY was intoxicated, was KENNY required
12 under California law to submit to WAL-MART's demand for his immediate drug or urine test through
13 HEALTHWORKS. Because, at the time of KENNY'S termination, neither WAL-MART or
14 HEALTHWORKS possessed good cause or any reasonable suspicion to warrant such a drug test,
15 KENNY could not be lawfully terminated for refusing to submit to said unlawful drug test.

16     100.    Because the demand that KENNY submit to a drug test lacked the requisite good cause
17 necessary to demand such a test under California law, WAL-MART'S and HEALTHWORKS'
18 conduct amounted to an unlawful invasion of KENNY'S privacy. Moreover, WAL-MART'S
19 requirement for a drug test was also especially invasive and unwarranted because KENNY'S
20 workplace injury was very unlikely on its face to have been caused by any drug use, even if any had
21 existed, which it did not. Thus, among other reasons, WAL-MART and HEALTHWORKS invaded
22 KENNY'S rights to privacy and, further, WAL-MART unlawfully terminated KENNY in retaliation
23 for refusing to immediately submit to WAL-MART's unlawful demand for an unjustified drug test.

25 **K.**    **Summary of KENNY'S Individual Allegations**

27     101.    In October 2015, KENNY informed WAL-MART of his disabilities and updated it as
28 to his medical status. After being released back to work, KENNY requested reasonable

1   accommodations, which WAL-MART denied without justification.  Instead, WAL-MART began

2   retaliating against KENNY by reducing his scheduled work hours. Then, after becoming re-injured in

3   January 2016 and notifying WAL-MART of such, WAL-MART and HEALTHWORKS attempted to

4   invade KENNY'S privacy rights, and, thereafter, WAL-MART immediately terminated KENNY

5   relying on false and unlawful justifications. WAL-MART consistently failed to accommodate KENNY

6   despite its ability to do so without undue hardship. Instead of accommodating KENNY, WAL-MART

7   fabricated false and unlawful reasons to terminate KENNY, resulting in WAL-MART unlawfully

8   denying KENNY the reasonable accommodations he was owed and, thus, discriminating and

9   retaliating against KENNY on the basis of his disabilities and/or his refusal to immediately submit to

10   WAL-MART'S and HEALTHWORKS' demands for an unlawful drug and/or urine test.

11       102.   WAL-MART'S decision to discriminate and retaliate against KENNY, and terminate

12   him, were made in total disregard and oppression of KENNY'S rights and welfare. Likewise, WAL-

13   MART'S decision to fabricate false reasons to justify his termination was also made in total disregard

14   and oppression of KENNY'S rights and welfare. Lastly, WAL-MART'S and HEALTHWORKS

15   efforts to violate KENNY'S privacy rights was also made in total disregard and oppression of

16   KENNY"S rights and welfare. As a result of these circumstances, KENNY has sustained and

17   continues to sustain significant damages, harms and losses. The full extent of KENNY'S damages will

18   be subject to proof at trial.

19

20                  **FIRST CAUSE OF ACTION**

21        **DISABILITY DISCRIMINATION IN VIOLATION OF FEHA**

22           **AND *GOVERNMENT CODE* § 12940(a)**

23            **(Against WAL-MART and DOES 1- 10)**

24       103.   As a separate and distinct cause of action, Plaintiffs complain and reallege all the

25   allegations contained in this complaint, and incorporate them by reference into this cause of action as

26   though fully set forth herein, excepting those allegations which are inconsistent with this cause of

27   action.

28   / / /

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 037

1     104.   At all times relevant to this action, Plaintiffs and the members of the Classes had actual

2  and/or perceived physical and/or mental disabilities within the meaning of *Government Code* §§

3  12926(m) and 12926.1, and the California Fair Employment and Housing Act (FEHA).

4     105.   Plaintiffs are informed and believe, and based thereon allege, that WAL-MART

5  discriminated against and/or terminated Plaintiffs and the members of the Classes because of their

6  actual and/or perceived disabilities and/or because it believed them to be disabled in violation of the

7  FEHA and California *Government Code* § 12940 (a).

8     106.   At all times, WAL-MART was aware of Plaintiffs and the members of the Classes'

9  disabilities and/or perceived them to be disabled, as set forth above, because they had informed WAL-

10  MART of their disabilities during their employment and/or because they had injured themselves within

11  the scope of their employment with WAL-MART.

12     107.   WAL-MART discriminated against Plaintiffs and the members of the Classes on the

13  basis of their actual and/or perceived disabilities by, *inter alia*, terminating their employment because

14  of such actual and/or perceived disabilities, failing to provide reasonable accommodations to them

15  despite the availability of such without undue hardship and applying unlawful policies to them,

16  including the requirement that they submit to unlawful urine and/or drug testing.

17     108.   At all times mentioned herein, Plaintiffs and the members of the Classes were willing

18  and able to perform the essential duties and functions of their positions and/or the positions sought or

19  available.

20     109.   At all times, WAL-MART knew, or should have known, that the conduct, acts, and

21  failures to act of WAL-MART and/or WAL-MART's owners, supervisors, agents and employees, as

22  described herein above, violated Plaintiffs' and the members of the Classes' rights under the law.

23  Likewise, WAL-MART knew, or in the exercise of reasonable care should have known, that unless

24  WAL-MART intervened to protect Plaintiffs and the members of the Classes and to adequately

25  supervise, prohibit, discipline, and/or otherwise penalize the conduct, acts, and failures to act of WAL-

26  MART and others as described herein, WAL-MART'S failure to so protect, supervise, and intervene

27  would have the effect of encouraging, ratifying, condoning, increasing and/or worsening said conduct,

28  acts, and failures to act, which is, in fact, what resulted.

-37-

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 038

110.   As a direct and proximate result of WAL-MART'S conduct and failures to act, Plaintiffs and the members of the Classes have sustained general damages according to proof.

111.   As a direct and proximate result of WAL-MART'S conduct and failures to act, Plaintiffs and the members of the Classes have sustained special damages according proof.

112.   The conduct of WAL-MART in discriminating against Plaintiffs and the members of the Classes because of their disabilities subjected them to cruel and unjust hardship in conscious disregard of their rights, as it was anticipated by WAL-MART that they would suffer damages in the foreseeable future.  Plaintiffs and the members of the Classes are informed and believes, and based thereon alleges, that WAL-MART's conduct against Plaintiffs and the members of the Classes was done with an intent to cause injury to them.  Moreover, the malicious, fraudulent and/or oppressive conduct was engaged in, authorized or ratified by officers, directors or managing agents of the corporation and/or was the result of the application of unlawful, malicious or oppressive policies and procedures.  As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiffs and the members of the Classes are entitled to an award of punitive damages in a sum to be shown according to proof pursuant to California *Government Code* §§ 12965 & 12970.

113.   Plaintiffs and the members of the Classes have incurred and continues to incur legal expenses and attorneys' fees which they are entitled to recover pursuant to California *Government Code* § 12965.

## SECOND CAUSE OF ACTION

### FAILURE TO REASONABLY ACCOMMODATE IN VIOLATION

### OF *GOVERNMENT CODE* § 12940 (m)

### (Against WAL-MART and DOES 1- 10)

114.   As a separate and distinct cause of action, Plaintiffs complain and reallege all the allegations contained in this complaint, and incorporate them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

/ / /

-38-

CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A 039**

1    115.    At all times relevant to this action, Plaintiffs and the members of the Classes had

2    physical and/or mental disabilities within the meaning of *Government Code* §§ 12926(m) and 12926.1,

3    and the California Fair Employment and Housing Act (FEHA).

4    116.    At all times, California *Government Code* §12940(m) requires employers to provide an

5    employee with a known physical or mental disability with a reasonable accommodation for said

6    disability. After being diagnosed with said disabilities, as described herein, Plaintiffs and the members

7    of the Classes requested reasonable accommodations in the form of medical treatment. Despite

8    learning of Plaintiffs' and the members of the Classes' disabilities, and their requests for reasonable

9    accommodations, WAL-MART failed and refused to accommodate their requests, and instead

10   terminated Plaintiffs and the members of the Classes from their employment. In doing so, and failing

11   and refusing to accommodate Plaintiffs and the members of the Classes, WAL-MART has violated

12   *Government Code* §12940 (m).

13   117.    As a direct and proximate result of WAL-MART'S conduct and failures to act,

14   Plaintiffs and the members of the Classes have sustained general damages according to proof.

15   118.    As a direct and proximate result of WAL-MART'S conduct and failures to act,

16   Plaintiffs and the members of the Classes have sustained special damages according proof.

17   119.    The conduct of WAL-MART in refusing and/or failing to reasonably accommodate

18   Plaintiffs and the members of the Classes subjected them to cruel and unjust hardship in conscious

19   disregard of their rights, as it was anticipated by WAL-MART that they would suffer damages in the

20   foreseeable future. Plaintiffs and the members of the Classes are informed and believes, and based

21   thereon alleges, that WAL-MART's conduct against Plaintiffs and the members of the Classes was

22   done with an intent to cause injury to them. Moreover, the malicious, fraudulent and/or oppressive

23   conduct was engaged in, authorized or ratified by officers, directors or managing agents of the

24   corporation and/or was the result of the application of unlawful, malicious or oppressive policies and

25   procedures. As a consequence of the aforesaid oppressive, malicious, and despicable conduct,

26   Plaintiffs and the members of the Classes are entitled to an award of punitive damages in a sum to be

27   shown according to proof pursuant to California *Government Code* §§ 12965 & 12970.

28   / / /

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 040

1    120.   Plaintiffs and the members of the Classes have incurred and continues to incur legal

2    expenses and attorneys' fees which they are entitled to recover pursuant to California *Government*

3    *Code* § 12965.

4

5                              **THIRD CAUSE OF ACTION**

6               **FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN**

7                  **VIOLATION OF *GOVERNMENT CODE* §12940 (n)**

8                       **(Against WAL-MART and DOES 1- 10)**

9    121.   As a separate and distinct cause of action, Plaintiffs complain and reallege all the

10   allegations contained in this complaint, and incorporate them by reference into this cause of action as

11   though fully set forth herein, excepting those allegations which are inconsistent with this cause of

12   action.

13   122.   At all times relevant to this action, Plaintiffs and the members of the Classes had

14   physical and/or mental disabilities within the meaning of *Government Code* §§ 12926(m) and 12926.1,

15   and the California Fair Employment and Housing Act (FEHA).

16   123.   After learning of Plaintiffs' and the members of the Classes' disabilities, WAL-MART

17   failed to engage in an interactive process with Plaintiffs and the members of the Classes to determine

18   whether WAL-MART could accommodate Plaintiffs' and the members of the Classes' disabilities

19   and/or their requests for reasonable accommodations, including, but not limited to, time to seek

20   medical treatment. In doing so, and failing and refusing to engage in an interactive process with

21   Plaintiffs and the members of the Classes, WAL-MART violated *Government Code* §12940 (n).

22   124.   As a direct and proximate result of WAL-MART'S conduct and failures to act,

23   Plaintiffs and the members of the Classes have sustained general damages according to proof.

24   125.   As a direct and proximate result of WAL-MART'S conduct and failures to act,

25   Plaintiffs and the members of the Classes have sustained special damages according proof.

26   126.   The conduct of WAL-MART in failing and/or refusing to engage in the interactive

27   process with Plaintiffs and the members of the Classes subjected them to cruel and unjust hardship in

28   conscious disregard of their rights, as it was anticipated by WAL-MART that they would suffer

-40-

**REMOVAL EXHIBIT A 041**

1   damages in the foreseeable future.  Plaintiffs and the members of the Classes are informed and

2   believes, and based thereon alleges, that WAL-MART's conduct against Plaintiffs and the members of

3   the Classes was done with an intent to cause injury to them.  Moreover, the malicious, fraudulent

4   and/or oppressive conduct was engaged in, authorized or ratified by officers, directors or managing

5   agents of the corporation and/or was the result of the application of unlawful, malicious or oppressive

6   policies and procedures.  As a consequence of the aforesaid oppressive, malicious, and despicable

7   conduct, Plaintiffs and the members of the Classes are entitled to an award of punitive damages in a

8   sum to be shown according to proof pursuant to California *Government Code* §§ 12965 & 12970.

9       127.   Plaintiffs and the members of the Classes have incurred and continue to incur legal

10  expenses and attorneys' fees which they are entitled to recover pursuant to California *Government*

11  *Code* § 12965.

12

13                        **FOURTH CAUSE OF ACTION**

14   **FAILURE TO MAINTAIN A WORKPLACE FREE FROM DISCRIMINATION**

15   **AND RETALIATION IN VIOLATION OF *GOVERNMENT CODE* §12940 (k)**

16                     **(Against WAL-MART and DOES 1- 10)**

17      128.   As a separate and distinct cause of action, Plaintiffs complain and reallege all the

18  allegations contained in this complaint, and incorporate them by reference into this cause of action as

19  though fully set forth herein, excepting those allegations which are inconsistent with this cause of

20  action.

21      129.   WAL-MART failed to take immediate and appropriate corrective action to prevent and

22  remedy the discrimination and/or retaliation to which Plaintiffs and the members of the Classes were

23  subjected to.  Specifically, WAL-MART set forth policies and procedures, and failed to properly train

24  its employees, as to relevant disability discrimination and reasonable accommodations laws, which not

25  only failed to prevent discrimination in the workplace, but actually created a discriminatory work

26  environment. Likewise, by discriminating against Plaintiffs and the members of the Classes,

27  terminating them, and/or retaliating against them based on their actual and/or perceived disabilities

28  and/or based on their requests for reasonable accommodations, WAL-MART failed to take immediate

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 042

and appropriate corrective action to prevent and/or remedy the discrimination and retaliation to which Plaintiffs and the members of the Classes were subjected to. At all times, WAL-MART knew of its legal obligations to maintain legally compliant policies and procedures, knew of its obligations to properly train its employees as to employees with disabilities, knew of Plaintiffs' and the members of the Classes' disabilities and/or perceived them to be disabled, and knew of their legal obligations to reasonably accommodate such disabilities, but disregarded all of these duties. Instead, WAL-MART retaliated against Plaintiffs and the members of the Classes and/or terminated them. Rather than taking reasonable steps to prevent discrimination and retaliation, WAL-MART ratified such conduct and continues to engage in such conduct on a wide-spread basis to this day.

130. As a direct and proximate result of WAL-MART'S conduct and failures to act, Plaintiffs and the members of the Classes have sustained general damages according to proof.

131. As a direct and proximate result of WAL-MART'S conduct and failures to act, Plaintiffs and the members of the Classes have sustained special damages according proof.

132. The conduct of WAL-MART in failing to maintain a workplace free of discrimination and/or retaliation for Plaintiffs and the members of the Classes subjected them to cruel and unjust hardship in conscious disregard of their rights, as it was anticipated by WAL-MART that they would suffer damages in the foreseeable future. Plaintiffs and the members of the Classes are informed and believes, and based thereon alleges, that WAL-MART's conduct against Plaintiffs and the members of the Classes was done with an intent to cause injury to them. Moreover, the malicious, fraudulent and/or oppressive conduct was engaged in, authorized or ratified by officers, directors or managing agents of the corporation and/or was the result of the application of unlawful, malicious or oppressive policies and procedures. As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiffs and the members of the Classes are entitled to an award of punitive damages in a sum to be shown according to proof pursuant to California *Government Code* §§ 12965 & 12970.

133. Plaintiffs and the members of the Classes have incurred and continue to incur legal expenses and attorneys' fees which they are entitled to recover pursuant to California *Government Code* § 12965.

///

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 043

# FIFTH CAUSE OF ACTION

## RETALIATION IN VIOLATION OF FEHA

### (Against WAL-MART and DOES 1- 10)

134.   As a separate and distinct cause of action, Plaintiffs complain and reallege all the allegations contained in this complaint, and incorporate them by reference into this cause of action as though fully set forth herein; excepting those allegations which are inconsistent with this cause of action.

135.   Plaintiffs and the members of the Classes engaged in protected activities by informing WAL-MART of their disabilities and/or injuries and/or by requesting reasonable accommodations to treat and/or recover from such disabilities. WAL-MART, acting at least partially in direct retaliation for Plaintiffs and the members of the Classes engaging in these protected activities, as described above, retaliated against Plaintiffs and the members of the Classes by refusing to accommodate them, by refusing to engage in a good-faith interactive process with them, by requiring that they submit to an unlawful and invasive drug and/or urine test, and/or by terminating them from their employment with WAL-MART.

136.   As a direct and proximate result of WAL-MART'S conduct and failures to act, Plaintiffs and the members of the Classes have sustained general damages according to proof.

137.   As a direct and proximate result of WAL-MART'S conduct and failures to act, Plaintiffs and the members of the Classes have sustained special damages according proof.

138.   The conduct of WAL-MART in retaliating against Plaintiffs and the members of the Classes due to them engaging in protected activities subjected them to cruel and unjust hardship in conscious disregard of their rights, as it was anticipated by WAL-MART that they would suffer damages in the foreseeable future. Plaintiffs and the members of the Classes are informed and believes, and based thereon alleges, that WAL-MART's conduct against Plaintiffs and the members of the Classes was done with an intent to cause injury to them. Moreover, the malicious, fraudulent and/or oppressive conduct was engaged in, authorized or ratified by officers, directors or managing agents of the corporation and/or was the result of the application of unlawful, malicious or oppressive policies and procedures. As a consequence of the aforesaid oppressive, malicious, and despicable

-43-

REMOVAL EXHIBIT A 044

1   conduct, Plaintiffs and the members of the Classes are entitled to an award of punitive damages in a

2   sum to be shown according to proof pursuant to California *Government Code* §§ 12965 & 12970.

3       139.    Plaintiffs and the members of the Classes have incurred and continue to incur legal

4   expenses and attorneys' fees which they are entitled to recover pursuant to California *Government*

5   *Code* § 12965.

6

7                           **SIXTH CAUSE OF ACTION**

8                   **RETALIATION AND WRONGFUL TERMINATION**

9                   **IN VIOLATION OF *LABOR CODE* § 1102.5**

10                      **(Against WAL-MART and DOES 1 - 10)**

11       140.    As a separate and distinct cause of action, Plaintiffs complain and reallege all the

12   allegations contained in this complaint, and incorporate them by reference into this cause of action as

13   though fully set forth herein, excepting those allegations which are inconsistent with this cause of

14   action.

15       141.    At all times herein mentioned, California *Labor Code* §§ 1102.5 et seq. was in full

16   force and effect and were binding on WAL-MART. Under *Labor Code* § 1102.5(c), an employer

17   "shall not retaliate against an employee for refusing to participate in an activity that would result in a

18   violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal

19   rule or regulation."

20       142.    At all time herein mentioned, as codified under California law, including, but not

21   limited to, *California Government Code* § 12940(m), *California Code of Regulations* § 11071 and the

22   Article I, §1 of the California Constitution, California administrative rules and holdings, including

23   those by the Occupational Safety and Health Administration, and the common law of the Courts of this

24   State and Country, including, but not limited to, *Kralawsky v. Upper Deck Company* (1997) 56 Cal.

25   App. 4th 846, 891-893, it is unlawful for an employer to require any employee to submit to a drug test

26   as a condition of that employee's employment, or continued employment, without specific, objective

27   facts that create a reasonable inference that the employee is under the influence of intoxicants and

28   which, thus, create good cause justifying such an invasion of the employee's rights to privacy. At all

-44-

1    times such laws, whether codified by statute or which simply reflect the common law of applicable

2    Courts of law, were in full force and effect and were binding on WAL-MART.

3        143.    During Plaintiffs' and the members of the Classes' employment with WAL-MART,

4    WAL-MART, as a condition of their continued employment, demanded that Plaintiffs and the

5    members of the Classes submit to a drug and/or urine test with HEALTHWORKS. However, in so

6    doing, WAL-MART made such a demand without any attempt to gather specific, objective facts which

7    warranted said drug test or demonstrated that any reasonable suspicion that Plaintiffs and the members

8    of the Classes were under the influence of any intoxicant. In response to WAL-MART'S demand,

9    because of their disabilities, because they did not want their privacy invaded and/or because they

10   siomply did not want to submit to such a test, failed to and/or refused to immediately submit to WAL-

11   MART'S unwarranted drug test and, thus, failed to comply with WAL-MART's demand that they

12   directly participate in WAL-MART's unlawful conduct and/or demands. As a result, in retaliation for

13   Plaintiffs' and the members of the Classes' refusals to immediately submit to WAL-MART'S unlawful

14   demands for that they participate in such unlawful conduct, WAL-MART terminated Plaintiffs and the

15   members of the Classes from their employment.

16       144.    As a direct, legal and/or proximate result of Plaintiffs' and the members of the Classes'

17   refusal to immediately engage in WAL-MART's unlawful conduct themselves despite WAL-MART'S

18   demand that they do so, WAL-MART retaliated against Plaintiffs and the members of the Classes by

19   wrongfully and unlawfully terminating them from their employment with WAL-MART. At all times,

20   such conduct constitutes a violation by WAL-MART of *Labor Code* § 1102.5 et seq.

21       145.    As a direct and proximate result of WAL-MART'S conduct and failures to act,

22   Plaintiffs and the members of the Classes have sustained general damages according to proof.

23       146.    As a direct and proximate result of WAL-MART'S conduct and failures to act,

24   Plaintiffs and the members of the Classes have sustained special damages according proof.

25       147.    The conduct of WAL-MART in retaliating against and/or terminating Plaintiffs and the

26   members of the Classes subjected them to cruel and unjust hardship in conscious disregard of their

27   rights, as it was anticipated by WAL-MART that they would suffer damages in the foreseeable future.

28   Plaintiffs and the members of the Classes are informed and believes, and based thereon alleges, that

-45-

**REMOVAL EXHIBIT A 046**

1 | WAL-MART's conduct against Plaintiffs and the members of the Classes was done with an intent to

2 | cause injury to them. Moreover, the malicious, fraudulent and/or oppressive conduct was engaged in,

3 | authorized or ratified by officers, directors or managing agents of the corporation and/or was the result

4 | of the application of unlawful, malicious or oppressive policies and procedures. As a consequence of

5 | the aforesaid oppressive, malicious, and despicable conduct, Plaintiffs and the members of the Classes

6 | are entitled to an award of punitive damages in a sum to be shown according to proof.

7 | 148. Plaintiffs and the members of the Classes have incurred and continue to incur legal

8 | expenses and attorneys' fees which they are entitled to recover pursuant to California *Labor Code* §

9 | 2699(g).

10 |

11 | ### SEVENTH CAUSE OF ACTION

12 | **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

13 | **(Against WAL-MART and DOES 1 - 10)**

14 | 149. As a separate and distinct cause of action, Plaintiffs complain and reallege all the

15 | allegations contained in this complaint, and incorporate them by reference into this cause of action as

16 | though fully set forth herein, excepting those allegations which are inconsistent with this cause of

17 | action.

18 | 150. California law prohibits termination or other adverse employment actions against

19 | employees for reasons that violate public policy. Plaintiffs are informed and believes and thereon

20 | alleges that WAL-MART violated public policy by terminating Plaintiffs and the members of the

21 | Classes employment for reasons that violate public policy of the State of California.

22 | 151. WAL-MART's termination of Plaintiffs' and the members of the Classes' employment

23 | violated California statutes and/or common law that inure to the benefit of the public at large and are a

24 | statement of California public policy, including: (a) *Government Code* § 12940(a); (b) *Government*

25 | *Code* § 12940(h); (c) *Government Code* § 12940(j); (d) *Government Code* § 12940(k); (e) *Government*

26 | *Code* § 12940(m); (f) *Government Code* § 12940(n); (g) *California Code of Regulations* § 11071; (h)

27 | Article 1, §1 of the California Constitution; (i) *Kralawsky v. Upper Deck Company* (1997) 56 Cal.

28 | App. 4th 846; 891-893; and (j) relevant Occupational Safety and Health Administration Rulings. These

REMOVAL EXHIBIT A 047

1   laws, statutes and their interpretative regulations inure to the benefit of the public at large, and embody

2   fundamental public policy of the State of California and/or the United States.

3         152.   As a direct and proximate result of WAL-MART'S conduct and failures to act,

4   Plaintiffs and the members of the Classes have sustained general damages according to proof.

5         153.   As a direct and proximate result of WAL-MART'S conduct and failures to act,

6   Plaintiffs and the members of the Classes have sustained special damages according proof.

7         154.   The conduct of WAL-MART in wrongfully terminating Plaintiffs and the members of

8   the Classes subjected them to cruel and unjust hardship in conscious disregard of their rights, as it was

9   anticipated by WAL-MART that they would suffer damages in the foreseeable future. Plaintiffs and

10   the members of the Classes are informed and believes, and based thereon alleges, that WAL-MART's

11   conduct against Plaintiffs and the members of the Classes was done with an intent to cause injury to

12   them. Moreover, the malicious, fraudulent and/or oppressive conduct was engaged in, authorized or

13   ratified by officers, directors or managing agents of the corporation and/or was the result of the

14   application of unlawful, malicious or oppressive policies and procedures. As a consequence of the

15   aforesaid oppressive, malicious, and despicable conduct, Plaintiffs and the members of the Classes are

16   entitled to an award of punitive damages in a sum to be shown according to proof.

17

18                             **EIGHTH CAUSE OF ACTION**

19           **VIOLATION OF THE CONSTITUTIONAL RIGHT TO PRIVACY**

20                 **(Against All Defendants and DOES 1 - 10)**

21         155.   As a separate and distinct cause of action, Plaintiffs complain and reallege all the

22   allegations contained in this complaint, and incorporate them by reference into this cause of action as

23   though fully set forth herein, excepting those allegations which are inconsistent with this cause of

24   action.

25         156.   At all times while employed by WAL-MART, Plaintiffs and the members of the

26   Classes had a reasonable expectation of privacy in the workplace and related to their employment with

27   WAL-MART as provided to them by Article 1, §1 of the California Constitution. Such privacy rights

28   included Plaintiffs' and the members of the Classes' reasonable expectations that, while employed by

REMOVAL EXHIBIT A 048

1   WAL-MART, they be free from intrusive, unwarranted drug testing, including urine tests, conducted

2   without reasonable suspicion based on known specific, objective facts which implicated that Plaintiffs

3   and the members of the Classes had been intoxicated while at work. Such a test, or request to take such

4   a test, would invade Plaintiffs' and the members of the Classes' privacy rights by potentially revealing

5   whether Plaintiffs and the members of the Classes suffered from any chronic medical conditions,

6   whether Plaintiffs and the members of the Classes suffered from any genetic disorders, whether

7   Plaintiffs and the members of the Classes took any medications and/or whether Plaintiffs and the

8   members of the Classes suffered from any sexually transmitted diseases, none of which would have

9   any relevance to Plaintiffs' and the members of the Classes' employment nor of which any third party,

10  including WAL-MART or HEALTHWORKS, had a right to know.

11        157.    Throughout Plaintiff's employment with Defendants maintained a uniform unlawful

12  policy, procedure and practice in California that required WAL-MART'S employees to submit to an

13  immediate, unlawful drug test with HEALTHWORKS whenever an employee suffered a workplace

14  injury, regardless of whether either WAL-MART or HEALTHWORKS had any reasonable suspicion

15  that the employee was intoxicated at work or whether there existed any evidence demonstrating that an

16  employee was intoxicated at work. At all times, these uniform policies, procedures and practices,

17  which failed to take into account the unique circumstances of the employee's workplace injury and

18  failed to take into account the absence of any evidence implying intoxication, was unlawful under

19  California law because such practices amount to an intentional violation of the privacy rights of all

20  injured or disabled WAL-MART employees as provided to them under Article 1, §1 of the California

21  Constitution.

22        158.    During Plaintiffs' and the members of the Classes' employment, Defendants

23  intentionally intruded on and violated Plaintiffs' and the members of the Classes' privacy rights by

24  insisting that, as a condition of their continued employment with WAL-MART, they submit to an

25  unlawful drug and/or urine test with HEALTHWORKS. At the time of such an unnecessarily invasive

26  demand, neither WAL-MART or HEALTHWORKS had gathered any specific, objective evidence that

27  Plaintiffs and the members of the Classes were intoxicated at work.

28  / / /

-48-

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 049

159. Plaintiffs and the members of the Classes refused to immediately consent to Defendants' unlawful demand that they immediately submit to its unlawful and invasive drug test with HEALTH WORKS. Instead, because Plaintiffs and the members of the Classes had been injured at work, because they continued to suffer from immense pain that required immediate medical intention, and because WAL-MART refused to provide them with any immediate medical attention to treat his workplace injury, Plaintiffs and the members of the Classes sought out the immediate medical attention that precluded them from taking the immediate unlawful drug test which Defendants demanded and lost their jobs as a result. Where other members of the classes took such unlawful drug tests, their privacy rights were unlawfully violated and/or they were terminated as a result of allegedly failing drugs test that they should have never been made to submit to.

160. At all times, Defendants' demanded drug tests was highly intrusive and offensive to a reasonable person, especially in light of Plaintiffs' and the members of the Classes' - employees' - reasonable expectations of privacy under such circumstances. This is especially true given that Plaintiffs and the members of the Classes were informed that their continued employment with WAL-MART had depended on them immediately submitting to these unlawful drug tests, even though neither WAL-MART or HEALTHWORKS had gathered any facts demonstrating that they were in any manner intoxicated at the time they incurred their injuries and, thus, failed to gather any information to warrant said drug test under California law. Therefore, WAL-MART's and HEALTHWORKS' demanded drug test amounted to an unlawful invasion of Plaintiffs' and the members of the Classes' privacy rights. Because such an invasion of Plaintiffs' and the members of the Classes' privacy rights directly led to their unlawful termination by WAL-MART and/or led to the disclosure of embarrassing and/or private information which would have not otherwise been revealed, such was also a substantial factor in causing Plaintiffs' and the members of the Classes' harm.

161. At all times through Plaintiffs' and the members of the Classes' employment with WAL-MART, HEALTHWORKS gave substantial assistance to WAL-MART by invading Plaintiffs' and the members of the Classes' privacy interests which both WAL-MART and HEALTHWORKS knew or should have known was part of a scheme in invading injured and/or disabled employees' privacy rights.

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 050

162.    As a direct and proximate result of Defendants' conduct and failures to act, Plaintiffs and the members of the Classes have sustained general damages according to proof.

163.    As a direct and proximate result of Defendants' conduct and failures to act, Plaintiffs and the members of the Classes have sustained special damages according proof.

164.    The conduct of Defendants in discriminating against Plaintiffs and the members of the Classes because of their disabilities subjected them to cruel and unjust hardship in conscious disregard of their rights, as it was anticipated by WAL-MART that they would suffer damages in the foreseeable future. Plaintiffs and the members of the Classes are informed and believes, and based thereon alleges, that WAL-MART's conduct against Plaintiffs and the members of the Classes was done with an intent to cause injury to them. Moreover, the malicious, fraudulent and/or oppressive conduct was engaged in, authorized or ratified by officers, directors or managing agents of the corporation and/or was the result of the application of unlawful, malicious or oppressive policies and procedures. As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiffs and the members of the Classes are entitled to an award of punitive damages in a sum to be shown according to proof.

165.    This action will result in the enforcement of the constitutional right to privacy, which is an important right affecting the public interest, and the potential invalidation of an unlawful policy affecting thousands of employees. Thus, this action will confer a significant benefit on a large class of persons, given the size of WAL-MART's workforce. As a result, Plaintiffs' and the members of the Classes' attorneys' fees incurred while pursuing such claims should not, in the interest of justice, be paid out of the recovery. Accordingly, Plaintiffs and the members of the Classes has incurred and continue to incur legal expenses and attorneys' fees which they are entitled to recover pursuant to California *Code of Civil Procedure* § 1021.5.

///

///

///

///

///

-50-

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 051

<u>**NINTH CAUSE OF ACTION**</u>

**AIDING AND ABETTING IN VIOLATION OF FEHA**

**(Against HEALTHWORKS and DOES 1 - 10)**

166.  As a separate and distinct cause of action, Plaintiffs complain and reallege all the allegations contained in this complaint, and incorporate them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

167.  HEALTHWORKS is subject to the laws of the State of California and are "persons" as defined in California *Government Code* §12925(d) against whom aiding and abetting liability may be imposed under California *Government Code* §12940(I), which makes it unlawful "for any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under [California *Government Code* §12940(I)] or attempt to do so."

168.  At all times through Plaintiffs' and the members of the Classes' employment with WAL-MART, HEALTHWORKS knew that WAL-MART had engaged in, and was engaging in, conduct which violated FEHA which included, but was not limited to, requiring disabled employees to take a drug test when they were injured at work for the purpose of finding a reason to take adverse employment actions, including a termination, against the employee.

169.  HEALTHWORKS conducted all of WAL-MART's drug tests without ever inquiring as to whether such drug tests were lawful or warranted, and WAL-MART's demand without any request from a doctor or other medical professional. HEALTHWORKS engaged in such conduct despite knowing and being aware of each of the following: (1) that WAL-MART's policy that every employee who was injured at work at WAL-MART must be drug tested, regardless of any reasonable suspicion or evidence implicating that employee's intoxication or drug use, (2) that such drug tests were not conducted for a diagnostic purpose, but, rather, in hopes of finding a reason to terminate a disabled employee, (3) that it was unlawful to discriminate against or terminate employees on the basis of their disabilities, (4) that only disabled WAL-MART employees were subject to such drug testing without any reasonable suspicion or evidence of intoxication, while non-disabled employees were only given drug tests when there was a reasonable suspicion of intoxication, and (5) that if a disabled employee

-51-

**REMOVAL EXHIBIT A 052**

1  ever refused to take such an unlawful drug test, that WAL-MART would also use such a refusal as a

2  reason to terminate the employee. HEALTHWORKS was paid by WAL-MART for each drug test it

3  administered. As such, despite its knowledge of the above facts and the illegality of its and WAL-

4  MART's conduct, HEALTHWORKS continued providing such unlawful drug tests, assisting WAL-

5  MART in its efforts to discriminate against and/or retaliate against disabled employees, because of the

6  financial gain HEALTHWORKS elicited by doing so.

7       170.    HEALTHWORKS gave substantial assistance to WAL-MART in violating FEHA,

8  which it knew or should have known was part of WAL-MART's scheme of discriminating and/or

9  retaliating against disabled employees. Such assistance and abetment by HEALTHWORKS to WAL-

10  MART included, but was not limited to, the following: (1) providing WAL-MART with consent forms

11  to provide to WAL-MART's disabled employees, which such employees were required to sign after

12  being injured at work; (2) requiring disabled employees to sign WAL-MART's consent forms when

13  they were injured at work and before they arrived at HEALTHWORKS' facilities; (3) performing drug

14  tests on disabled employees who were injured at work without justification, (4) requiring that disabled

15  employees waive their constitutional right to privacy as a condition of HEALTHWORKS providing

16  any medical evaluation or service; (5) requiring that disabled employees waive their constitutional

17  right to privacy as a condition of HEALTHWORKS providing such unlawful drug tests; and (6)

18  requiring disabled employees to submit to such unlawful drug tests as a condition of

19  HEALTHWORKS providing any medical evaluation or service.

20       171.    HEALTHWORKS assistance in and abetment of WAL-MART's discriminatory

21  conduct all led to Plaintiffs and the members of the Classes unlawful termination by WAL-MART

22  and/or the discrimination they suffered, damaging Plaintiffs and the members of the Classes as a result.

23       172.    As a direct and proximate result of HEALTHWORKS'conduct and failures to act,

24  Plaintiffs and the members of the Classes have sustained general damages according to proof.

25       173.    As a direct and proximate result of HEALTHWORKS' conduct and failures to act,

26  Plaintiffs and the members of the Classes have sustained special damages according proof.

27       174.    The conduct of HEALTHWORKS in assisting and/or abetting WAL-MART in

28  discriminating against Plaintiffs and the members of the Classes because of their disabilities subjected

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 053

1   them to cruel and unjust hardship in conscious disregard of their rights, as it was anticipated by WAL-

2   MART that they would suffer damages in the foreseeable future.  Plaintiffs and the members of the

3   Classes are informed and believes, and based thereon alleges, that WAL-MART's conduct against

4   Plaintiffs and the members of the Classes was done with an intent to cause injury to them.  Moreover,

5   the malicious, fraudulent and/or oppressive conduct was engaged in, authorized or ratified by officers,

6   directors or managing agents of the corporation and/or was the result of the application of unlawful,

7   malicious or oppressive policies and procedures.  As a consequence of the aforesaid oppressive,

8   malicious, and despicable conduct, Plaintiffs and the members of the Classes are entitled to an award

9   of punitive damages in a sum to be shown according to proof pursuant to California *Government Code*

10  §§ 12965 & 12970.

11        175.   Plaintiffs and the members of the Classes have incurred and continue to incur legal

12  expenses and attorneys' fees which they are entitled to recover pursuant to California *Government*

13  *Code* § 12965.

14

15                              **TENTH CAUSE OF ACTION**

16                         **DECLARATORY AND INJUNCTIVE RELIEF**

17                          **(Against All Defendants and DOES 1 - 10)**

18        176.   As a separate and distinct cause of action, Plaintiffs complain and reallege all the

19  allegations contained in this complaint, and incorporate them by reference into this cause of action as

20  though fully set forth herein, excepting those allegations which are inconsistent with this cause of

21  action.

22        177.   At all times relevant herein, the FEHA and California *Government Code* § 12920.5

23  provides that "in order to eliminate discrimination, it is necessary to provide effective remedies that

24  will both prevent and deter unlawful employment practices and redress the adverse effects of those

25  practices on aggrieved persons. Likewise, one of the stated purposes of FEHA, under California

26  *Government Code* § 12920 is "to provide effective remedies which will eliminate" employment

27  discrimination. Consequently, the FEHA, pursuant to California *Government Code* §§ 12926(a).

28  authorizes a Court to grant injunctive relief and prospective relief including, but not limited to, cease

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 054

1  and desist orders, posting of notices, training of personnel and other similar relief that is intended to

2  correct unlawful employment practices.

3      178.   An actual controversy exists between Plaintiffs and the members of the Classes, and

4  Defendants concerning whether Defendants violated Plaintiffs' and the members of the Classes' rights

5  under the FEHA by discriminating against Plaintiffs and the members of the Classes, violated

6  Plaintiffs' and the members of the Classes' rights under the FEHA by retaliating against them on the

7  basis of their disabilities, requests for reasonable accommodation and/or refusal to submit to an

8  unlawful drug and/or urine test while employed by WAL-MART, and/or violated Plaintiffs' and the

9  members of the Classes' rights under the California constitution by requiring that they submit to an

10  unlawful drug test without legal justification.

11      179.   Plaintiffs and the members of the Classes seek a finding from the Court that WAL-

12  MART's adverse employment actions were substantially motivated by unlawful discrimination and/or

13  retaliation, regardless of whether or not WAL-MART proves that it would made the same employment

14  decisions concerning Plaintiffs and the members of the Classes even if discrimination and/or

15  retaliation were not substantial motivating factors for WAL-MART's adverse employment actions

16  against Plaintiffs and the members of the Classes. Concurrently, Plaintiff seeks an order from the

17  Court condemning WAL-MART's discriminatory and/or retaliatory employment policies and/or

18  practices as provided by California *Code of Civil Procedure* § 1060.

19      180.   An actual controversy exists between Plaintiffs and the members of the Classes and

20  HEALTHWORKS concerning whether HEALTHWORKS violated Plaintiff's rights under the FEHA

21  aiding, abetting and/or engaging in discrimination against Plaintiff on the basis of his disabilities.

22  Plaintiff seeks a finding from the Court that HEALTHWORKS aided and abetted WAL-MART in its

23  unlawful, discriminatory and/or retaliatory adverse employment actions against Plaintiffs and the

24  members of the Classes, regardless of whether or not WAL-MART proves that it would made the

25  same employment decisions concerning Plaintiffs and the members of the Classes even if

26  discrimination and/or retaliation were not substantial motivating factors for WAL-MART's adverse

27  employment actions against Plaintiffs and the members of the Classes. Concurrently, Plaintiffs and the

28  members of the Classes seek an order from the Court condemning HEALTHWORKS' conduct of

1  aiding and abetting discriminatory and/or retaliatory employment practices and policies as provided by

2  California *Code of Civil Procedure* § 1060.

3      181. In addition, upon finding of unlawful discrimination, Plaintiffs and the members of the

4  Classes request that the Court grant injunctive relief to stop the discriminatory practices which violate

5  FEHA as provided for in California *Government Code* §§ 12920 & 12920.5, and the California

6  Supreme Court's decisions in *Harris v. City of Santa Monica* (2013) 56 Cal. 4th 2013, 234-235, and

7  *Aguilar v. Avis Rent A Car Systems, Inc.* (1999) 21 Cal. 4th 121, 131-132.

8      182. Plaintiffs and the members of the Classes also seek a finding from the Court that WAL-

9  MART'S and/or HEALTHWORKS uniform practices, policies and/or procedures which automatically

10  require that any employee working for WAL-MART who injures themselves within the performance

11  and/or scope of their duties immediately submit to a drug test or else face termination is unlawful and

12  in violation of California law. Concurrently, Plaintiffs and the members of the Classes seeks an order

13  from the Court condemning WAL-MART'S and/or HEALTHWORKS unlawful drug testing practices,

14  policies and/or procedures as provided by California *Code of Civil Procedure* § 1060.

15      183. Upon a determination that such findings and declaratory relief relief, as requested

16  above, is appropriate, Plaintiffs and the members of the Classes request that this Court also enter an

17  order enjoining WAL-MART and HEALTHWORKS from engaging in, aiding in or abetting in any

18  such discriminatory practices, described herein, prohibiting WAL-MART and HEALTHWORKS from

19  performing automatic drug and/or urine tests on individuals on no other basis that a workplace injury

20  or disability, requiring the posting of notices containing employees' rights and detailing their

21  violations of FEHA, requiring WAL-MART to effectively train its personnel in relevant California

22  laws, including the FEHA, prohibiting discrimination in the workplace, requiring an interactive

23  process and requiring reasonable accommodations, and requiring that WAL-MART makes periodic

24  reports to the Court to ensure its compliance with its obligations under the FEHA and such injunctive

25  relief ordered by the Court.

26      184. Plaintiffs and the members of the Classes have incurred and continue to incur legal

27  expenses and attorneys' fees which they are entitled to recover pursuant to California *Government*

28  *Code* § 12965.

CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A 056**

## ELEVENTH CAUSE OF ACTION

### VIOLATION OF *BUSINESS AND PROFESSIONS CODE* § 17200

### (Against All Defendants and DOES 1 - 10)

185.    As a separate and distinct cause of action, Plaintiffs complain and reallege all the allegations contained in this complaint, and incorporate them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

186.    Defendants' violations of Plaintiffs' and the members of the Classes' right to privacy by demanding that they submit to an unlawful drug test, WAL-MART's unlawful termination of Plaintiffs and the members of the Classes, Defendants either aiding in, abetting in and/or engaging in discrimination against Plaintiffs and the members of the Classes on the basis of their disabilities and/or injuries, and/or Defendants forcing Plaintiff to submit to a drug test as a condition of his continued employment in further acts of discrimination and/or retaliation against Plaintiffs and the members of the Classes all constitute unlawful activity and unfair business practices prohibited by California *Business and Professions Code* § 17200, et seq.

187.    Plaintiffs and the members of the Classes are entitled to an injunction under California *Business and Professions Code* § 17202, and/or other equitable relief against such unlawful and unfair practices in order to prevent future loss, for which there is no adequate remedy at law, and to avoid a multiplicity of lawsuits. Plaintiffs and the members of the Classes bring this cause of action collectively, as members of the general public and as representatives of all others subject to Defendants' unlawful and unfair acts and business practices.

188.    As a result of Defendants' unlawful and unfair business practices, each have reaped and continue to reap unfair benefits at the expense of Plaintiffs, the members of the Classes and the public at large, all of which have been prejudiced by such unfair business practices.

189.    As a direct and proximate result of Defendants' unfair business practices in violation of California *Business and Professions Code* § 17200, et seq., Plaintiffs and the members of the Classes are entitled to equitable relief, including full restitution and disgorgement of profits that Defendants' have received in engaging in such unlawful and unfair business practices. Additionally, Plaintiffs and

-56-

REMOVAL EXHIBIT A 057

1  the members of the Classes request that the Court issue a preliminary and permanent injunction

2  prohibiting Defendants from continuing to engage in the unlawful and/or unfair business practices

3  described herein, including their unlawful drug and/or urine tests by HEALTHWORKS of employees

4  who are injured within the scope of their employment with WAL-MART and the termination of any

5  employees related to such demands.

6        190.    Enforcement of constitutional and statutory provisions enacted and common law

7  created to protect privacy is a fundamental public interest in California. Plaintiffs' and the members of

8  the Classes' success in this action will result in the enforcement of important rights affecting the public

9  interest and will confer a significant benefit upon the general public. The private enforcement of the

10  rights enumerated herein is necessary as no public agency has pursued enforcement. Such attorneys'

11  fees should not, in the interest of justice, be paid out of any recovery. Accordingly, Plaintiffs and the

12  members of the Classes have incurred and continue to incur legal expenses and attorneys' fees which

13  they are entitled to recover pursuant to California *Code of Civil Procedure* § 1021.5.

14

15                                 **PRAYER FOR RELIEF**

16        WHEREFORE, Plaintiffs, on behalf of himself and all other similar situated, pray for judgment

17  as follows:

18        **A.**    **As to All Eleven (11) Causes of Action:**

19        That the Court issue an Order certifying the Classes herein, appointing the named Plaintiffs as

20  representatives of all others similarly situated, and appointing the law firms representing the named

21  Plaintiffs as counsel for the members of the Classes;

22        **B.**    **As to the First Cause of Action for Disability Discrimination:**

23            1.    For general and special damages according to proof;

24            2.    For pre-judgment interest to the extent allowed by law;

25            3.    For punitive and/or exemplary damages in an amount to punish Defendants;

26            4.    For costs of suit incurred herein;

27            5.    For expert's costs and fees incurred herein;

28            6.    For attorney's fees in prosecuting this action;

CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A 058**

1          7.    For reinstatement of the members of the Classes' employment into the same

2    and/or similar positions lost; and

3          8.    For such other and further relief as the Court deems just and proper, including

4    declaratory and/or injunctive relief if appropriate.

5    **C.**    **As to the Second Cause of Action for Failure to Reasonably Accommodate:**

6          1.    For general and special damages according to proof;

7          2.    For pre-judgment interest to the extent allowed by law;

8          3.    For punitive and/or exemplary damages in an amount to punish Defendants;

9          4.    For costs of suit incurred herein;

10         5.    For expert's costs and fees incurred herein;

11         6.    For attorney's fees in prosecuting this action; and

12         7.    For such other and further relief as the Court deems just and proper.

13   **D.**    **As to the Third Cause of Action for Failure to Engage in the Interactive Process:**

14         1.    For general and special damages according to proof;

15         2.    For pre-judgment interest to the extent allowed by law;

16         3.    For punitive and/or exemplary damages in an amount to punish Defendants;

17         4.    For costs of suit incurred herein;

18         5.    For expert's costs and fees incurred herein;

19         6.    For attorney's fees in prosecuting this action; and

20         7.    For such other and further relief as the Court deems just and proper.

21   **E.**    **As to the Fourth Cause of Action for Failure to Maintain a Workplace Free from**

22       **Discrimination and Retaliation:**

23         1.    For general and special damages according to proof;

24         2.    For pre-judgment interest to the extent allowed by law;

25         3.    For punitive and/or exemplary damages in an amount to punish Defendants;

26         4.    For costs of suit incurred herein;

27         5.    For expert's costs and fees incurred herein;

28         6.    For attorney's fees in prosecuting this action; and

CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A 059**

7. For such other and further relief as the Court deems just and proper.

F. **As to the Fifth Cause of Action for Retaliation in Violation of FEHA:**

1. For general and special damages according to proof;

2. For pre-judgment interest to the extent allowed by law;

3. For punitive and/or exemplary damages in an amount to punish Defendants;

4. For costs of suit incurred herein;

5. For expert's costs and fees incurred herein;

6. For attorney's fees in prosecuting this action;

7. For reinstatement of the members of the Classes' employment into the same and/or similar positions lost; and

8. For such other and further relief as the Court deems just and proper, including declaratory and/or injunctive relief if appropriate.

G. **As to the Sixth Cause of Action for Retaliation and Wrongful Termination in Violation of _Labor Code_ § 1102.5:**

1. For general and special damages according to proof;

2. For pre-judgment interest to the extent allowed by law;

3. For punitive and/or exemplary damages in an amount to punish Defendants;

4. For costs of suit incurred herein;

5. For attorney's fees in prosecuting this action; and

6. For such other and further relief as the Court deems just and proper.

H. **As to the Seventh Cause of Action for Wrongful Termination in Violation of Public Policy:**

1. For general and special damages according to proof;

2. For pre-judgment interest to the extent allowed by law;

3. For punitive and/or exemplary damages in an amount to punish Defendants;

4. For costs of suit incurred herein; and

5. For such other and further relief as the Court deems just and proper.

///

-59-

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 060

I.    **As to the Eighth Cause of Action fo Violation of the Constitutional Right to**

       **Privacy:**

       1.    For general and special damages according to proof;

       2.    For pre-judgment interest to the extent allowed by law;

       3.    For punitive and/or exemplary damages in an amount to punish Defendants;

       4.    For costs of suit incurred herein;

       5.    For attorney's fees in prosecuting this action; and

       6.    For such other and further relief as the Court deems just and proper.

J.    **As to the Ninth Cause of Action for Aiding and Abetting in Violation of FEHA:**

       1.    For general and special damages according to proof;

       2.    For pre-judgment interest to the extent allowed by law;

       3.    For punitive and/or exemplary damages in an amount to punish Defendants;

       4.    For costs of suit incurred herein;

       5.    For expert's costs and fees incurred herein;

       6.    For attorney's fees in prosecuting this action;

       7.    For reinstatement of the members of the Classes' employment into the same and/or similar positions lost; and

       8.    For such other and further relief as the Court deems just and proper.

K.    **As to the Tenth Cause of Action for Declaratory and Injunctive Relief:**

       1.    For an order for declaratory relief stating that Defendants act complained of herein are unlawful;

       2.    For an order for injunctive relief, including a temporary and/or permanent injunction prohibiting Defendants from engaging in the acts complained of herein;

       3.    For equitable relief;

       4.    For costs of suit incurred herein;

       5.    For attorney's fees in prosecuting this action; and

       6.    For such other and further relief as the Court deems just and proper, including other declaratory, equitable and/or injunctive relief if appropriate.

CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A 061**

**L.**      <u>As to the Eleventh Cause of Action for Unfair Business Practices:</u>

        1.      For an accounting, under administration of Plaintiffs and/or the receiver and subject to Court review, to determine the amount to be returned by Defendants, and the amounts of restitution owed by Defendants;

        2.      For an order requiring Defendants to identify each of the members of the Classes by name, home address, and home telephone number;

        3.      For an order requiring Defendants to make full restitution and payment of disgorged or unfair profits;

        4.      For an order for a preliminary and/or permanent injunction prohibiting Defendants from engaging in the acts complained of herein;

        5.      For the creation of an administrative process wherein each injured member of the Classes may submit a claim in order to receive his/her money;

        6.      For all other appropriate declaratory and equitable relief;

        7.      For interest to the extent permitted by law;

        8.      For costs of suit incurred herein;

        9.      For attorney's fees in prosecuting this action; and

        10.      For such other and further relief as the Court deems just and proper, including other declaratory, equitable and/or injunctive relief if appropriate.

Dated: January 12, 2017.

DAVID M. DERUBERTIS, ESQ.
THE DERUBERTIS LAW FIRM, APC.
BRENNAN S. KAHN, ESQ.
PERONA, LANGER, BECK, SERBIN,
MENDOZA & HARRISON, APC.
Attorneys for Plaintiff, Kris Kenny, and all other similarly situated

-61-

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A 062

1    **DEMAND FOR JURY TRIAL**

2        Plaintiffs hereby demand trial by jury on all issues so triable in the Complaint, or any other

3    pleading filed in this matter.

4

5

6    Dated: January 12, 2017.

7    _____

8    **DAVID M. DERUBERTIS, ESQ.**
     **THE DERUBERTIS LAW FIRM, APC.**
     **BRENNAN S. KAHN, ESQ.**
9    **PERONA, LANGER, BECK, SERBIN,**
     **MENDOZA & HARRISON, APC.**
10   Attorneys for Plaintiff, Kris Kenny, and all other similarly
     situated

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-62-

CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A 063**